**Morton BIRNBAUM, Plaintiff-Appellant,**

v.

**Ray E. TRUSSELL, Commissioner of the Department of Hospitals of the City of New York, Robert J. Mangum, First Deputy Commissioner of the Department of Hospitals of the City of New York, and William Lewis, President, Local 237, International Brotherhood of Teamsters, Defendants-Appellees.**

**No. 87, Docket 30300.**

United States Court of Appeals
Second Circuit.

Submitted Oct. 21, 1966.

Decided Dec. 28, 1966.

Paul J. Clifford, and George D. Garofallou, New York City, for plaintiff-appellant.

J. Lee Rankin, Corporation Counsel of City of New York, Seymour B. Quel, and William A. Marks, New York, New York, for defendants-appellees Trussell and Mangum.

Louis E. Yavner, and Robert Nelson Shiverts, New York City, for defendant-appellee William Lewis, etc.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The appellant, Morton Birnbaum, a physician licensed to practice medicine in the State of New York, brought this action *pro se* on May 1, 1964 against the three defendants-appellees in the United States District Court for the Southern District of New York. He based jurisdiction on 42 U.S.C. § 1983 "and other

sections of the Civil Rights Laws" and sought damages of $25,000 and costs. The defendant, Ray E. Trussell, was then Commissioner of the New York City Department of Hospitals, and the defendant, Robert J. Mangum, was his First Deputy Commissioner. William Lewis, the other defendant, was president of Local 237 of the International Brotherhood of Teamsters, a union which represented non-medical employees in the City's hospitals.

The complaint alleged in conclusory terms that the three defendants had conspired to have Dr. Birnbaum discharged from his position as a part-time attending physician at Coney Island Hospital, a municipal hospital in Brooklyn, New York, "because of his race" and that he "would not have been dismissed from his position if he were Negro instead of being white." The substance of the charge was that Lewis and other representatives of the union had falsely accused appellant of being anti-Negro and abusing Negro hospital personnel and had applied pressure to Trussell and Mangum until they discharged the appellant.

The defendants jointly moved to dismiss the complaint pursuant to Rule 12 (b) (6), Fed.R.Civ.P., for lack of jurisdiction and failure to state a claim upon which relief could be granted. The district court granted the motion. It concluded that the court lacked jurisdiction because Trussell and Mangum, as state officers, were immune from suit and because Lewis, not being a state official, was not under the prohibition of the statute. This court reversed the jurisdictional ground of dismissal [1] but held that the complaint did not state a cause of action. The case was, therefore, remanded and the district court was instructed to dismiss the complaint with leave to amend.

The amended complaint sets forth in great detail the events leading to the dismissal of appellant from his position at Coney Island Hospital. It reiterates the charge that Dr. Birnbaum was a victim of racism and was dismissed because he was white, but adds the allegation that he was summarily discharged without a hearing, and that the appellees conspired to bring this about. It is alleged that Mangum, although he knew that Dr. Birnbaum was entitled to a hearing under state law,[2] refused to give him a copy of the charges against him and fired him without a hearing. It is further alleged that, following this summary dismissal from the staff of the Coney Island Hospital, a letter was sent by Mangum to all other municipal hospitals instructing them not to place appellant on their staffs. On motion by appellees, the district court again dismissed the complaint, but this time on the ground that it failed to state a claim upon which relief could be granted.

Appellant seeks recovery under either Rev.Stat. Sec. 1979 (1875), 42 U.S.C. § 1983 [3] or Rev.Stat. Sec. 1980(3) (1875),

1. Birnbaum v. Trussell, 347 F.2d 86 (2 Cir. 1965). We rejected the district court's conclusion because "[i]t would nullify the whole purpose of the civil rights statutes to permit all governmental officers to resort to the doctrine of official immunity." 347 F.2d at 88–89. Regarding the dismissal as to Lewis, we concluded that, while he was not a state officer, he could still be "held liable if he conspired to deprive the plaintiff of the equal protection of the laws. Spampinato v. M. Breger & Co., 270 F.2d 46, 49 (2d Cir. 1959), cert. denied, 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363 (1960); see Collins v. Hardyman, 341 U.S. 651, 661–662, 71 S. Ct. 937, 95 L.Ed. 1253 (1951)." 347 F. 2d at 89.

2. Dr. Birnbaum was a classified employee under Sec. 40 of the New York Civil Service Law. McKinney's Consol.Laws, c. 7. He is also a veteran of World War II. New York Civil Service Law Sec. 85. Section 75 of the New York Civil Service Law provides that anybody in either of these categories "shall not be removed * * * except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section."

3. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

42 U.S.C. § 1985(3) (1959).[4] While we agree that the appellant does not satisfy the requirements of Sec. 1985(3), we reverse because we conclude that he has stated a good cause of action under Sec. 1983 on the facts alleged, which we summarize as follows:

Dr. Birnbaum, as a physician on the staff of Coney Island Hospital, was assigned to treat patients in the emergency room and admitting wards. While so employed he became involved in four troublesome incidents with Negro non-medical employees of the hospital. On October 22, 1962, he reprimanded a nurse's aide, who was a Negro, because she refused, when he requested it, to give up a chair in which she was sitting to a person who was faint. She complained to the union which immediately filed a grievance against the appellant, accusing him of prejudice against Negroes and asserting the proposition that nurse's aides were not required to obey the orders of physicians.

As the result of pressure by the union the appellant was forthwith discharged by the hospital supervisor but was shortly thereafter reinstated when it was pointed out to the supervisor that the doctor could not be removed without a hearing before the medical board. The hospital administrators advised him, however, that the union was publicly accusing him of anti-Negro bias and was continuing to press for the doctor's removal.

A few months later, when late at night the appellant needed to have an immediate X-ray taken of one of his patients, a Negro technician refused to take it because of the lateness of the hour. The appellant complained to the head of the radiology department, who ordered the technician to take the X-ray. A few days later, as a result of this complaint, the technician accosted and assaulted the appellant and charged him with being hostile to minority groups. Representatives of the union again accused Dr. Birnbaum of anti-Negro bias and asked for his removal.

Two other incidents arose a little later which involved a nurse's aide whom the appellant reproved, on the first occasion for being noisy and boisterous in a ward, and on the second for refusing to take a patient to the X-ray room. She asserted that she did not have to take orders from a physician.

The union again complained to the commissioner's office and the appellant was ordered by the hospital superintendent to appear for a hearing to be held before Mangum.[5] The appellant requested a a copy of the charges, but was refused. He then retained counsel and, after further attempts to obtain a copy of the charges proved futile, he protested that he was entitled to a hearing before the medical board, and notified Mangum that he would not appear unless he was given a copy of the charges. Mangum then notified him that he was dismissed and followed this with a letter to all of the City's other hospitals with instructions not to put Dr. Birnbaum on their staffs. Following the appellant's dismissal, Lewis and the other union representatives let it be known that they had secured his

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" (referred to as "Section 1983").

4. "If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators" (referred to as "Section 1985(3)").

5. Appellee Trussell was on vacation during this period and left Mangum in his stead as acting commissioner.

removal and continued, as part of a campaign to increase the membership of the union, to accuse him of abusing Negroes.

Appellant's basic complaint is that the appellees conspired to discharge him without the hearing he was entitled to under state law. In addition to this, he contends that he was fired because he was white, rather than Negro.

 It is on this second contention that the appellant claims that his complaint states a good cause of action under Sec. 1985(3), because he was deprived of equal protection of the law or equal privileges and immunities under the law. The facts alleged, however, do not substantiate his claim. It may very well be true that appellant would not have been discharged if he were a Negro. Nevertheless, the fact remains that other white doctors were not discharged. It is thus apparent that appellees cannot be charged with discriminating between whites and Negroes and discharging the former; nor does a simple showing of unequal application of the law make out a violation of Sec. 1985(3), even if it is malicious. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Hoffman v. Halden, 268 F.2d 280, 290 (9 Cir. 1949); Agnew v. City of Compton, 239 F.2d 226 (9 Cir. 1956); Burt v. City of New York, 156 F.2d 791, 792 (2 Cir. 1946).[6]

 Although the facts alleged do not make out a good claim of deprivation of "equal protection of the laws, or of equal privileges and immunities under the laws" within Sec. 1985(3), they do present a cause of action for conspiracy to violate Sec. 1983. This circuit has never decided whether an action can be maintained for conspiracy to violate Sec.

1983. See Powell v. Workmen's Compensation Board, 327 F.2d 131, 136–137 (2 Cir. 1964) (expressly reserving decision on the point). The Ninth Circuit authorized such an action in Hoffman v. Halden, supra, thus making it possible for a private person to be held liable under Sec. 1983 for conspiring together with state officials to deprive persons of rights secured by that section. See also Lewis v. Brautigam, 227 F.2d 124, 55 A.L.R.2d 505 (5 Cir. 1955); Scolnick v. Winston, 219 F.Supp. 836, 842 (S.D.N.Y. 1963). But see Egan v. City of Aurora, 291 F.2d 706, 708 (7 Cir. 1961); Jennings v. Nester, 217 F.2d 153, 154 (7 Cir. 1954). There is no impediment to permitting such an action and to deny it would unnecessarily discriminate between those rights, on the one hand, which are protected by Sec. 1985, such as the right to equal protection of the laws and the other rights, privileges and immunities secured by the Constitution, and those rights, on the other hand, which are intended to be protected by Sec. 1983, which should be interpreted with sufficient liberality to fulfill its purpose of providing a federal remedy in a federal court in protection of a federal right. Monroe et al. v. Pape et al., 365 U.S. 167, 180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Brazier v. Cherry, 293 F.2d 401, 404 (5 Cir. 1961). We therefore conclude that an action may be maintained for conspiracy to violate Sec. 1983.

 Liability under the section must be based upon the "deprivation of any rights, privileges or immunities secured by the Constitution and laws * * *."[7] In the present action the appellant claims that the right which he was denied was the right not to be deprived of property

6. Lee v. Hodges, 321 F.2d 480 (4 Cir. 1963) illustrates the kind of allegations which will satisfy Sec. 1985(3). Plaintiff was maliciously denied use of certain public facilities by public officials, while these same officials knowingly permitted others to use the facilities. The complaint was held to be good. See also Hoffman v. Halden, supra, 268 F.2d at 290, "it must be alleged and proved that the purpose of the acts complained of was to dis-

criminate between persons or classes of persons."

7. Appellant contends that he was deprived of his right not to be discharged without a hearing as secured by Sec. 75 of the New York Civil Service Law. However, Sec. 1985(3) does not protect rights guaranteed by state law. Stiltner v. Rhay, 322 F.2d 314 (9 Cir. 1963); O'Connor v. O'Connor, 315 F.2d 420, 422 (5 Cir.

without due process of law. The allegations assert that the appellees conspired to bring about the removal of the appellant from his position with the City hospital and to deny the appellant a hearing on notice prior to his being discharged and that they succeeded in both of their objectives. Moreover, the dismissal occurred while appellant was falsely being charged by the appellees with having anti-Negro bias, using scurrilous and abusive language toward Negroes and abusing Negro subordinates. These charges were alleged to have been made over a long period of time by the union and its representatives and to have gained wide circulation. The appellant could properly claim that by summarily discharging him in the midst of such accusations and by advising the other City hospitals by letter not to employ him, the Department of Hospitals gave them a stamp of official authority, and not only deprived him of his employment, but seriously damaged his professional reputation in the community as a physician. In such circumstances, the due process clause guarantees one the right to have notice of the charges against him and to a hearing on these charges before being dismissed. If the appellees conspired to and did in fact deprive Dr. Birnbaum of this right, they violated Sec. 1983.

Public employees, of course, have no absolute right to a hearing on discharge from public employment because government employment is a privilege and not a property right. See, e.g.,

Taylor v. Beckham, 178 U.S. 548, 577, 20 S.Ct. 1009, 44 L.Ed. 1187 (1900); Crenshaw v. United States, 134 U.S. 99, 104, 10 S.Ct. 431, 33 L.Ed. 825 (1890); In re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402 (1888); Bailey v. Richardson, et al., 86 U.S.App.D.C. 248, 182 F.2d 46, 57 (1950), affirmed without opinion by an equally divided court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951). See generally, 1 Davis, Administrative Law, (Treatise) §§ 7.11, 7.12 (1958); Note, Dismissal of Federal Employees—The Emerging Judicial Role, 66 Colum.L.Rev. 719 (1966).[8] Since Justice Holmes, then a judge of the Massachusetts Supreme Judicial Court, said, "[t]he petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman,"[9] the courts have become more inclined to consider the causes of discharge and the methods and procedures by which a dismissal is effected as it may bear upon reputation and the opportunity for employment thereafter. It is quite clear that, in the circumstances surrounding Dr. Birnbaum's removal from office, more was involved than merely the loss of the privilege of public employment. See Wieman v. Updegraff, 344 U.S. 183, 190–191, 73 S.Ct. 215, 97 L.Ed. 216 (1952). As was said in a similar context, "even if working for the Government is regarded as no more than a privilege, a discharge for disloyalty or for doubt about loyalty may involve such legal rights as those in reputation and in eligibility for other employment."[10] See also

1963); Ortega v. Ragen, 216 F.2d 561 (7 Cir. 1954); Kenney v. Killian, 133 F. Supp. 571, 577 (W.D.Mich.1955), aff'd sub nom. Kenney v. Fox, 232 F.2d 288 (6 Cir. 1956). Cf. Screws v. United States, 325 U.S. 91, 108, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

8. In Bailey v. Richardson, 182 F.2d at 58, for example, it was said, "[i]n the absence of statute or ancient custom to the contrary, executive offices are held at the will of the appointing authority, not for life or for fixed terms. If removal be at will, of what purpose would process be? To hold office at the will of a superior and to be removable therefrom only by

constitutional due process of law are opposite and inherently conflicting ideas. Due process of law is not applicable unless one is being deprived of something to which he has a right."

9. McAuliffe v. City of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1892). Petitioner, a policeman, had been charged with political canvassing, in violation of Police Department rules. Petitioner appeared at a hearing, but, upon refusal of the mayor to furnish him with a copy of the charges, refused to proceed and was then removed from office. His writ of mandamus for reinstatement was denied.

10. 1 Davis, supra, Sec. 7.12 at 459.

Bailey v. Richardson, supra, 182 F.2d at 66 et seq. (Edgerton, J. dissenting). Cf. United States v. Lovett, 328 U.S. 303, 314, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252 (1946).[11] As the Supreme Court has recognized, the inquiry does not end with the statement that there is no right to work for the government. See e. g., Wieman v. Updegraff, supra; United Public Workers v. Mitchell, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ In *Wieman*, the petitioner had been removed from the faculty of a state college for failure to take a loyalty oath. The state contended that, since there was no federally created right to work for the state school system, see Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952), the petitioner could not complain about the grounds upon which he was removed from a state teaching position. The Supreme Court said that to generalize "that there is no constitutionally protected right to public employment is to obscure the issue." The petitioner was reinstated, because the due process clause protected him from removal pursuant to a patently arbitrary statute. Cf. Schware v. Board of Bar Examiners, 353 U.S. 232, 238–239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (disregarding the "right-privilege" distinction). Furthermore, the due process clause protects not only against impermissible grounds of discharge, but also

against an improper manner of discharge. In Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), petitioner was summarily dismissed from his teaching position in a municipal college after he asserted the privilege against self-incrimination before the Senate Internal Security Subcommittee. The court recognized that there was no constitutional right to "be an associate professor of German at Brooklyn College." It said, "[t]he State has broad powers in the selection and discharge of its employees, and it may be that proper inquiry would show Slochower's continued employment to be inconsistent with a real interest of the State. But there has been no such inquiry here. We hold that the summary dismissal of appellant violates due process of law." 350 U.S. at 559, 76 S.Ct. at 641. Cf. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (decided on statutory grounds); Parker et al. v. Lester et al., 227 F.2d 708 (9 Cir. 1955).[12]

■ The principle to be extracted from these cases is that, whenever there is a substantial interest, other than employment by the state, involved in the discharge of a public employee, he can be removed neither on arbitrary grounds nor without a procedure calculated to determine whether legitimate grounds do exist.[13] Most of the cases, of course,

11. In *Lovett*, petitioners were ordered discharged from their government positions, proscribed from future employment and denied pay all by an act of Congress. The act was passed after a committee inquiry into subversives in government. The Supreme Court decided that there was a justiciable controversy, because Congress' action had "stigmatized [petitioners'] reputation and seriously impaired their chance to earn a living." It then struck down the act as a Bill of Attainder.

12. In *Parker*, the Coast Guard was authorized to exclude persons on security grounds from serving in the merchant marine in wartime. A seaman applying for clearance was to be investigated and, if found dangerous, to be informed of the "general basis" for his denial. He could then seek review before an appeal board,

have the aid of counsel and introduce evidence. But the record upon which the Coast Guard made its initial denial could not be made available to the applicant. The court held that the due process clause was violated.

While the petitioner in *Parker* was not a public employee, Congress' power to exclude persons from employment as a wartime security measure put him in a position no more privileged than a public employee. For that reason, the court's holding should be applicable to the case of a public employee.

13. In this case, there are two substantial interests involved: reputation and the ability to pursue a profession effectively. Both are ordinarily accorded meticulous protection, by the libel laws and the latter, in particular, by rules designed to

involve accusations of disloyalty. However, the principle announced is applicable in this case because the potential injury to the public employee is similar.[14] As in the case of one accused of disloyalty, removal from office under charges of race prejudice permanently brands the person accused as one who is unable to put public and professional duty above personal bias. In this case, it was well calculated to injure appellant's career as a physician both in private and public practice.

Moreover, it is readily apparent that whatever injury appellant has suffered was a result of his being denied a hearing.[15] If appellant had been given an opportunity at a hearing prior to his removal to contest charges of anti-Negro bias, he might have been able to dispel the rumors and charges immediately, before his reputation suffered material damage. Furthermore, if he failed to do so, he could have had no complaint under federal law about his dismissal.[16] Cf. Slochower v. Board of Higher Education, supra. In either case, a full hearing was the only way appellant's substantial interests could have been protected, and Sec. 1983 affords him a right of action for injuries suffered in consequence of the denial of such a hearing.

Reversed and remanded.

HAYS, Circuit Judge (concurring):

I concur in the result.

It cannot strictly be said that Dr. Birnbaum's complaint claims that he was

---

prevent direct injury by arbitrary state action. See Schware v. Board of Bar Examiners, supra 353 U.S. at 238–239, 77 S.Ct. 752; Konigsberg v. State Bar, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923); Crane v. Johnson, 242 U.S. 339, 37 S.Ct. 176, 61 L.Ed. 348 (1917); Dent v. State of West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

14. See Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 180, 71 S.Ct. 624, 653, 95 L.Ed. 817 (1951) (Douglas, J. concurring and discussing Bailey v. Richardson, supra) ("[a] disloyalty trial is the most crucial event in the life of a public servant. If condemned, he is branded for life as a person unworthy of trust or confidence"). In almost all of the cases discussed, the interest involved was reputation, and the traditional distaste for an effective defamation without the ability to contest the charges in an impartial tribunal bore on the decision. In one, Parker v. Lester, supra, the primary interest was the right to employment in a highly specialized industry in which the petitioner had been trained.

15. It is clear that Mangum's refusal to give appellant a copy of the charges was as much a denial of his rights as an absolute refusal to allow him a hearing. Whatever knowledge Dr. Birnbaum may have gleaned about the charges against him from hospital rumors was not the "notice" which the due process clause requires. A party against whom the Government is proceeding is entitled to be apprised by the Government, with some precision and specificity, of its reasons for so doing. See Willner v. Committee on Character & Fitness, 373 U.S. 96, 104–105, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), motion for clarification denied 375 U.S. 950, 84 S.Ct. 439, 11 L.Ed. 312 (1963); Morgan v. United States, 304 U.S. 1, 18–19, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938) ("The right to a hearing embraces * * * a reasonable opportunity to know the claims of the opposing party * * * Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes * * * *"); Hornsby v. Allen, 326 F.2d 605, 608 (5 Cir.), rehearing denied 330 F.2d 55 (5 Cir. 1964). "Nor can extra-official or casual notice * * * be deemed a substitute for the due process of law that the Constitution requires." Coe v. Armour Fertilizer Works, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915).

16. Appellant could be fired under state law only for incompetency or misconduct. New York Civil Service Law § 75. Thus a hearing was required under state law to determine whether or not there was incompetency or misconduct. However, as we have said before, this is not a ground for relief under § 1983. The hearing here was required under federal law so that appellant could have the opportunity to protect the interests other than state employment which were inextricably connected with his removal from office.

denied a hearing. It appears that he declined to attend a hearing unless he was furnished with a copy of the charges against him. In view of the fact that the charges had received a wide airing and had been the subject of discussion between Dr. Birnbaum and various of his superiors, it is difficult to believe that Dr. Birnbaum was seriously prejudiced by the refusal to provide him with a copy. He could have attended the scheduled hearing and, if any of the charges or of the testimony against him took him by surprise, requested a continuance to prepare himself to meet the new matter.

I believe, however, that Dr. Birnbaum may properly claim a deprivation of his rights in spite of his failure to attend the scheduled hearing. The hearing was to be conducted by Mangum who, Birnbaum alleges, was one of those engaged in a conspiracy against him. A claimant for relief under the Civil Rights laws need not always exhaust his administrative remedies and is to be excused from doing so when the effectiveness of such remedies is questionable. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Powell v. Workmen's Compensation Board, 327 F.2d 131 (2d Cir. 1964).

It is my view that Dr. Birnbaum's complaint sufficiently states a claim of deprivation of his constitutional right to the equal protection of the laws within the meaning of Sections 1983 and 1985(3).

Dr. Birnbaum alleges that he was discharged from his position in the employ of the city because of his race. Whatever validity there may be to the view of the majority that public employment is in some sense a privilege, it is certain that the Constitution provides protection against denial of such employment on the ground of race.

"We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952); Torcaso v. Watkins, 367 U.S. 488, 496, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); Cramp v. Board of Public Instruction, 368 U.S. 278, 288, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Franklin v. County School Board, 360 F.2d 325 (4th Cir. 1966); Keyishian v. Board of Regents, 345 F.2d 236 (2d Cir. 1965), on remand, 255 F.Supp. 981 (W.D.N.Y. 1966), prob.juris. noted, 384 U.S. 998, 86 S.Ct. 1921, 16 L.Ed.2d 1012 (1966) (No. 1226, 1965 Term; renumbered No. 105, 1966 Term).

My brethren reject Dr. Birnbaum's claim that he was deprived of equal protection because other white doctors were not discharged. There is nothing in the record which establishes that other white doctors were not discharged.[1] But whether or not there were others is irrelevant. It requires no citation of authority to show that any individual against whom discrimination is directed can properly complain of deprivation of equal protection, regardless of whether others are subjected to the same discriminatory treatment.

---

1. Indeed Birnbaum's complaint alleges that "Lewis and his agents" conducted "campaigns of racial hatred and discrimina-tion" against two other white employees, one of them a physician.