**Demetrius P. TRAGGIS et al.,**
**Plaintiffs–Appellants,**

v.

**ST. BARBARA'S GREEK ORTHODOX CHURCH et al., Defendants–Appellees.**

**No. 984, Docket 87–9056.**

United States Court of Appeals,
Second Circuit.

Argued March 21, 1988.

Decided June 30, 1988.

Gary A. Mastronardi, Bridgeport, Conn., for plaintiffs-appellants.

Hugh F. Keefe, New Haven, Conn. (Michael J. McClary, Lynch, Traub, Keefe & Errante, P.C., New Haven, Conn., of counsel), for all defendants-appellees except Ebenezer Chapel, Inc. and Reverend Walter J. Oliver.

Barbara L. Cox, New Haven, Conn. (Dennis N. Garvey, P.C., New Haven, Conn., of counsel), for defendants-appellees Ebenezer Chapel, Inc. and Reverend Walter J. Oliver.

Before FEINBERG, Chief Judge, and CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

The question presented in this appeal from a judgment entered in the United States District Court for the District of Connecticut, Robert C. Zampano, *Judge*, is whether the federal civil rights conspiracy statute, 42 U.S.C. § 1985, provides a remedy for injuries resulting from an alleged private conspiracy to deprive persons of the equal protection of the public accommodations provision of the Connecticut Human Rights and Opportunities Act, Conn.Gen. Stat. § 46a–64.

I

St. Barbara's Greek Orthodox Church ("St. Barbara's") is an ecclesiastical corporation organized and existing under the laws of the State of Connecticut. For many years, St. Barbara's church building was located on church-owned property, at 56 Dwight Street, in New Haven, Connecticut. St. Barbara's is affiliated with the Greek Orthodox Church in the Americas and is within the authority and control of the Greek Orthodox Archdiocese of North and South America. In accordance with the *Special Regulations and Uniform Parish Regulations of the Greek Orthodox Archdiocese of North and South America*, St. Barbara's is governed by a "Parish Council," which acts as the administrative body of the Parish, and by the "Parish Assembly," which is defined as "the general meeting of the members of the Parish."

In 1969 St. Barbara's Parish Assembly voted to form a search committee to investigate a new location for the church. The committee subsequently recommended, and the Parish Assembly approved, the purchase of land and buildings in Orange, Connecticut. Parish regulations, however, required the approval of two-thirds of the Parish Assembly before the Parish Council could agree to sell the property at 56 Dwight Street and begin construction of a new church in Orange. For several years the Parish Council was unable to obtain the necessary two-thirds majority. Finally, on July 10, 1985, the Parish Assembly authorized the Council to offer the Dwight Street property for sale and to complete construction of the new church, which would be financed by the proceeds of the sale. A group of parishioners, who had been disqualified from voting at the July 10 meeting, challenged the legality of the vote, but a state court ruled in favor of the Parish Council on November 15, 1985.

According to appellants, at some point following the July 10 meeting, St. Barbara's Parish Council began to negotiate the sale of the Dwight Street property with Ebenezer Chapel, Inc. ("Ebenezer"), an ecclesiastical corporation organized and existing under the laws of the State of Connecticut. In November, 1985, the Parish Council and Ebenezer executed a final purchase and sale agreement, and on December 11, 1985, St. Barbara's conveyed the property to Ebenezer. Appellants claim that this transaction was not disclosed to any member of the Parish Assembly at any time prior to closing. The deed of conveyance to Ebenezer includes the following restrictive covenant:

1. Restriction that the premises not be conveyed, rented to or leased by any

individual, party, organization or entity that is a member of, or affiliated with, the Greek Orthodox faith, said restriction to run with the land for ten (10) years from the date hereof.

Shortly after the sale of the Dwight Street property was made public, a faction of St. Barbara's parishioners decided to disassociate itself from St. Barbara's and to become affiliated with a separate sect of the Greek Orthodox faith not under the control of the Greek Orthodox Church or the Archdiocese. On September 4, 1986, this group, the appellants herein, filed an action in the United States District Court for the District of Connecticut against St. Barbara's; its pastor, Father William S. Kehayes; its officers, directors, and members of the Parish Council; Archbishop Iacovos, the Archbishop of the Greek Orthodox Church in the Americas; Bishop Athenagoras, whose diocese includes St. Barbara's Parish; and Ebenezer and its pastor, the Reverend Walter J. Oliver. The complaint alleged, *inter alia*, that appellees conspired to deprive appellants of their rights under the first and fourteenth amendments to the United States Constitution, in violation of 42 U.S.C. § 1985(3) (1982). In response, appellees filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which Judge Zampano subsequently converted into a motion for summary judgment.

By supplemental memorandum in opposition to appellees' motion, appellants abandoned their claims under the first and fourteenth amendments and proposed to file an amended complaint alleging that: (1) appellees, with the exception of Archbishop Iacovos and Bishop Athenagoras, had conspired in violation of 42 U.S.C. § 1985(3) to deprive appellants "of the equal protection and equal privileges and immunities of the laws of the state of Connecticut," specifically, the public accommodations provision of the Connecticut Human Rights and Opportunities Act (the "Connecticut Act"), Conn.Gen.Stat. § 46a–64; and (2) appellees Iacovos, Athenagoras, and Kehayes "having full knowledge of the foregoing wrongs ... and being able to prevent or aid in preventing the commission of the same,

have neglected to do so, in violation of 42 U.S.C. Section 1986." Appellants claimed, among other things, that appellees prevented appellants from lawfully purchasing the Dwight Street property "for no other reason except that [appellants] were members of the Greek Orthodox faith."

On November 24, 1987, Judge Zampano entered an order granting appellees' motion for summary judgment. As a preliminary matter, Judge Zampano noted that the parties had not addressed "whether this action involves ecclesiastical questions which should not be answered by a civil court." Nevertheless, despite serious misgivings as to "whether the plenary review requested by the parties" was appropriate in light of *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), the district court proceeded to consider the merits of appellants' claim. Relying on dictum in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the court held that appellants' proposed amended complaint failed to state a cause of action, because 42 U.S.C. § 1985(3) provides a remedy only for the deprivation of substantive rights created and guaranteed by *federal* law. Thus, the court ruled that appellants had no right to recover under § 1985(3) for their claim that appellees had conspired to deprive them of the equal protection of Connecticut law. In the alternative, Judge Zampano held that St. Barbara's Church had not violated the Connecticut Act, because the church does not qualify as a "public accommodation" under Conn.Gen.Stat. § 46a–63. The court entered a judgment in favor of appellees, and this appeal followed. We affirm.

II

To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a

right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970). The statute itself provides no substantive rights; instead, it "provides a remedy for violation of the rights it designates." *Novotny,* 442 U.S. at 372, 99 S.Ct. at 2349. Determining which rights the statute "designates," however, is not always a simple matter. Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution. *See, e.g., United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (§ 1985(3) applies in case of public conspiracy to deprive persons of their rights under the first amendment); *Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (§ 1985(3) applies in case of private or public conspiracy to deprive persons of their rights under the thirteenth amendment). Less clear is the extent to which the statute remedies injuries resulting from private conspiracies to deprive persons or classes of persons of the equal protection of, or equal privileges and immunities under, federal statutory law or state law.

The Supreme Court first considered the extent to which § 1985(3) applies to private conspiracies to deprive individuals and classes of the equal protection of federal statutory law in *Novotny.* In *Novotny,* the Court held that a person injured by a conspiracy to violate § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), is not deprived of "the equal protection of the laws, or the equal privileges and immunities under the laws," within the meaning of § 1985(3). In reaching this conclusion, the Court noted that Title VII cases "are subject to a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims." 442 U.S. at 372–73, 99 S.Ct. at 2349. Thus, "[i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law." *Id.* at 376, 99 S.Ct. at 2351. For example, § 1985(3) expressly authorizes compensato-

permit punitive damages as well, *id.;* by contrast, "[t]he majority of the federal courts have held that [Title VII] does not allow a court to award general or punitive damages," *id.* at 375, 99 S.Ct. at 2350. Similarly, the plaintiff or defendant in a § 1985(3) action might demand a jury trial, *id.* at 376, 99 S.Ct. at 2351, whereas "the courts have consistently held that neither party has a right to a jury trial" in Title VII cases, *id.* at 375, 99 S.Ct. at 2350. The Court also noted that the litigants in a § 1985(3) action would not be constrained by the "short and precise time limitations of Title VII," *id.* at 376, 99 S.Ct. at 2351; and "[p]erhaps most importantly, the [§ 1985(3)] complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII," *id.* Accordingly, the Court held that § 1985(3) does not apply to conspiracies to violate Title VII.

In *dictum,* the Court in *Novotny* appeared to suggest that private conspiracies to deprive persons of the equal protection of *state* law are not actionable under § 1985(3). Writing for the majority in *Novotny,* Justice Stewart stated that § 1985(3) "is a purely remedial statute, providing a civil cause of action when some otherwise defined *federal* right ... is breached by a conspiracy in the manner defined by the section." 442 U.S. at 376, 99 S.Ct. at 2351 (emphasis added). In a separate concurrence, Justice Powell, joined by Justice Stevens, stated that the reach of § 1985(3) "is limited to conspiracies to violate those fundamental rights derived from the Constitution." 442 U.S. at 379, 99 S.Ct. at 2352 (Powell, J., concurring). In another separate concurrence, Justice Stevens, joined by Justice Powell, wrote that "the Congress which enacted [§ 1985(3)] was concerned with providing federal remedies for the deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment." 442 U.S. at 383, 99 S.Ct. at 2354. Thus, in Justice Stevens' view, § 1985(3) was not "intended to provide a remedy for the violation of statutory rights." 442 U.S. at 385, 99 S.Ct. at 2355.

Presumably, if Justice Stevens and Justice Powell were correct in their view that § 1985(3) applies only to conspiracies to deprive persons of their federal constitutional rights—and not to conspiracies to deprive persons of their rights under federal statutory law—then *a fortiori* § 1985(3) would not apply to conspiracies to deprive individuals of their rights under *state* statutory law. Finally, even the dissenting Justices in *Novotny* seemed to imply that § 1985(3) applies to federal rights only. *See* 442 U.S. at 388, 99 S.Ct. at 3257 (White, J., dissenting) ("the words 'equal privileges and immunities under the laws' in § 1985(3) refer to substantive rights created or guaranteed by other federal law, be it the Constitution or federal statutes other than § 1985(3)").

More recently, however, the Court has implied that § 1985(3) might, in fact, reach private conspiracies to violate state law. As noted above, in *United Bhd. of Carpenters v. Scott*, the Court held that § 1985(3) does not provide a remedy in the case of a purely private conspiracy to deprive individuals of their rights under the first and fourteenth amendments. 463 U.S. at 833–34, 103 S.Ct. at 3359. The Court then went on to state, however, that:

> The Court of Appeals [for the Fifth Circuit] ... erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment. Because of that holding the Court of Appeals found it unnecessary to determine whether respondents' action could be sustained under § 1985(3) as involving a conspiracy to deprive respondents of rights ... under *state law* or those protected against private action by the Federal Constitution or federal statutory law. Conceivably, we could remand for consideration of these possibilities, or we ourselves could consider them. We take neither course, for in our view the Court of Appeals should also be reversed on the dispositive ground that § 1985(3)'s requirement that there must be "some ... class-based ... animus ...," ... was not satisfied in this case.

*Id.* (emphasis added). While this quotation hardly rises to the level of holding that private conspiracies to violate state law are remediable under § 1985(3), it *suggests* that a majority of the Court in 1983 believed this to be an open issue. Significantly, both Justice Powell and Justice Stevens concurred in the majority opinion in *Scott.*

On the two previous occasions when this court has considered whether § 1985(3) reaches private conspiracies to violate state law it has reached different conclusions. In *Birnbaum v. Trussell*, 371 F.2d 672 (2d Cir.1966), a physician filed an amended complaint pursuant to 42 U.S.C. §§ 1983 and 1985(3) against the Commissioner of the New York City Department of Hospitals, the first deputy commissioner, and the president of Local 237 of the International Brotherhood of Teamsters, a union that represented non-medical employees in the city's hospitals. The plaintiff alleged, *inter alia*, that the defendants had conspired to discharge him from his position as a part-time attending physician at Coney Island Hospital without the hearing to which he was entitled under N.Y.Civ.Serv.Law § 75. The federal district court dismissed the amended complaint on the ground that it failed to state a claim upon which relief could be granted. On appeal, this court reversed the dismissal of the § 1983 action, reasoning that appellant had stated a federal claim that he had been deprived of a property right without due process of law. The court affirmed the dismissal of the § 1985(3) claim, however, on the ground that "Sec. 1985(3) does not protect rights guaranteed by state law." *Id.* at 676 n. 7.

Sixteen years later, in *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 41–42 (2d Cir.1982), *modified on other grounds*, 718 F.2d 22 (2d Cir.1983) (in banc), we held that a conspiracy to hinder a state from following its own state law obligations is "a colorable subject for an action under" § 1985(3). In *11 Cornwell*, the State of New York filed suit in federal court on behalf of its mentally retarded citizens charging the defendant, a partnership, with (1) a conspiracy to prevent and hinder the State from providing the mentally retarded with equal protection of the laws, in violation of § 1985(3); (2) a conspiracy to deny

the mentally retarded equal protection of the laws, also in violation of § 1985(3); and (3) discrimination on the basis of disability in the sale of housing, in violation of the New York Human Rights Law, N.Y. Exec. Law § 296(5)(a). Reasoning that the State's federal claim was "substantial," the district court held that it had jurisdiction to consider the pendent state law claim. Following "the preferred procedure," the court considered the state claim first, held that defendants had violated the state law, and entered a judgment in favor of the State without reaching the merits of the federal claim. On appeal, this court held that the State's federal claim was sufficiently substantial to allow the district court to exercise jurisdiction over the pendent state claim. We noted, first, that "New York has an obligation under its own laws ... as well as the federal Constitution ... to release from institutional confinement those mentally retarded citizens who are not dangerous to themselves or others." 695 F.2d at 41. The court held that, even though the fourteenth amendment may not have compelled the State to select the particular method of deinstitutionalization at issue, "the alleged conspiracy to hinder the state from carrying out its chosen means of securing substantive rights is ... a colorable subject for an action under the 'preventing or hindering' clause" of § 1985(3), 695 F.2d at 42. The Court cited with approval the Ninth Circuit's decision in *Life Ins. Co. of North Am. v. Reichardt*, 591 F.2d 499, 505 (9th Cir.1979), which held that "[v]iolations of state conferred rights and privileges are sufficient to constitute a deprivation of 'equal protection of the laws.'"

Whether *11 Cornwell* and *Birnbaum* are consistent, or whether *Birnbaum* has been implicitly overruled, is problematic. Narrowly construed, *11 Cornwell* holds that the issue of whether a conspiracy to *prevent* or *hinder* a *state* from carrying out its chosen method of securing a right guaranteed by the federal constitution is a "substantial" question; *Birnbaum*, however, holds only that a conspiracy to *deprive* an *individual* of a right guaranteed by state law is not remediable under § 1985(3). On the other hand, the fact that

the court in *11 Cornwell* quoted with approval the Ninth Circuit decision in *Reichardt*, which held that state law violations are actionable under § 1985(3), might suggest that the *11 Cornwell* should be interpreted more broadly. A broader interpretation, however, would suggest that *Birnbaum* may have been superseded.

The other courts that have considered the relation between § 1985(3) and state law have reached differing conclusions. *See, e.g., Reichardt*, 591 F.2d at 505 (private conspiracy to deprive persons of equal protection of state law is actionable under § 1985(3)); *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 930 (5th Cir. 1977) (in banc) (same); *Cohen v. Illinois Inst. of Technology*, 524 F.2d 818, 828 (7th Cir.1975) (Stevens, C.J.) (§ 1985(3) only reaches conspiracies to deprive persons of federally protected rights), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Nieto v. UAW Local 598*, 672 F.Supp. 987, 991–92 (E.D.Mich.1987) (only federally protected rights); *Shaare Tefila Congregation v. Cobb*, 606 F.Supp. 1504, 1509–10 (D.Md.1985) (only federally protected rights), *aff'd*, 785 F.2d 523, 525 (4th Cir.1986), *rev'd on other grounds*, —— U.S. ——, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987); *Thompson v. International Ass'n of Machinists*, 580 F.Supp. 662, 667 (D.D.C.1984) (only federally protected rights). *See also Daigle v. Gulf State Utils.*, 794 F.2d 974, 979 (5th Cir.) (no need to decide issue on facts of case), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986); *Kinniburgh v. Burlington Northern R.R.*, 568 F.Supp. 655, 656–67 (D.Mont.1983) (district judge stating that he was "unable to reconcile the concepts inherent in *Reichardt* and *Novotny*").

### III

#### A

Appellants claim that appellees have conspired to deprive them of their rights under a particular state law, the public accommodations provision of the Connecticut Human Rights and Opportunities Act, Conn. Gen.Stat. § 46a–64. The Connecticut Act is a comprehensive legislative scheme that prohibits, *inter alia*, discrimination in the provision of employment, public accommo-

dations, and education on the basis of race, color, religious creed, age, sex, marital status, national origin, ancestry, mental retardation, and physical disability. *See generally* Conn.Gen.Stat. §§ 46a–51 to 46a–99. The Act establishes a State Commission on Human Rights and Opportunities, *id.* § 46a–52, which is authorized to appoint investigators, to publish regulations consistent with the Act, and to hold hearings, *id.* § 46a–54, and which is charged with the duty of investigating and proceeding in all cases of discriminatory practices that are brought to its attention, *id.* § 46a–56. Subject to certain exceptions, any person claiming to be aggrieved by a discriminatory practice prohibited by the Act may file a complaint with the Commission within 180 days after the alleged act of discrimination. *Id.* § 46a–82. If a commissioner or investigator determines that there is reasonable cause to believe that the complaint is meritorious, "he shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion." *Id.* § 46a–83(a). A hearing follows if these efforts to conciliate fail. *Id.* § 46a–84. Following the hearing, the Commission may enter an appropriate order and seek to enforce such an order in state court. *Id.* § 46a–95(a). Any respondent, or any complainant aggrieved by a final order of a hearing officer or by the Commission's dismissal of his complaint, may appeal to the Connecticut superior court. *Id.* § 46a–95(j). On appeal, the superior court may choose to allow the introduction of additional evidence, but the appeal must be conducted without a jury. *Id.* § 4–183(e), (f).

The particular substantive provision of the Connecticut Act at issue in this case is § 46a–64, relating to public accommodations. In relevant part, this provision states that "[i]t shall be a discriminatory practice ... [t]o deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin [or] ancestry." *Id.* § 46a–64(a)(1). · A "place of public accommodation" is defined as "any establishment which caters or offers its services or facilities or goods to the general public, including, but not limited to ... any

housing accommodation, commercial property or building lot, on which it is intended that a housing accommodation or commercial building will be constructed or offered for sale or rent." *Id.* § 46a–63(1)(B). Appellants claim that appellees violated § 46a–64 by denying appellants an opportunity to bid on the Dwight Street property, solely on account of their religion. And although it might seem odd to allege that St. Barbara's Greek Orthodox Church has discriminated against appellants, other members of the Greek Orthodox· faith, on the basis of religion, appellants point out that the deed of conveyance contains the aforementioned restrictive covenant purporting to forbid the resale of the property to anyone affiliated with the Greek Orthodox faith for a period of ten years.

As noted above, Judge Zampano entered judgment in favor of appellees on the ground that private conspiracies to violate state law are not actionable under § 1985(3), and, in the alternative, on the ground that appellees' alleged conduct did not violate § 46a–64. Apropos § 46a–64, Judge Zampano concluded, "It is clear that the defendants are engaged in a religious venture and not a commercial enterprise, and that St. Barbara's Church, as a house of worship, is a religious edifice and not a commercial building." Appellants dispute this interpretation of § 46a–64, reasoning that because the Dwight Street property *can* be used for commercial purposes, the property is a "public accommodation" subject to the constraints of the Connecticut Human Rights and Opportunities Act. We are unaware of any Connecticut case law that is precisely on point.

### B

In our view, it is unnecessary in the present case to reach the merits of appellants' state law claim; nor is it necessary to reach the broader question of whether, generally speaking, § 1985(3) forbids private conspiracies to deprive a person or persons of the equal protection of state law. Assuming, without deciding, that appellants have alleged a violation of § 46a–64, and that private conspiracies to deprive persons of the equal protection of state law are remediable under § 1985(3),

we do not believe that § 1985(3) applies to the *particular* state law at issue in this case. For all intents and purposes the Connecticut Act is a state law version of Title VII. Like Title VII, the Act provides a detailed administrative process for handling discrimination complaints. Indeed, many of the provisions of the Connecticut Act are quite similar to the provisions of Title VII. *Compare* Conn.Gen.Stat. § 46a–52 (establishment of Human Rights Commission) *with* 42 U.S.C. § 2000e–4(a) (establishment of Equal Employment Opportunity Commission); Conn.Gen.Stat. § 46a–54 (power of Commission to issue regulations) *with* 42 U.S.C. § 2000e–12 (power of E.E.O.C. to issue suitable procedural regulations); Conn.Gen.Stat. § 46a–56 (Commission's duty to investigate) *with* 42 U.S.C. § 2000e–5(b) (E.E.O.C.'s duty to investigate); Conn.Gen.Stat. § 46a–82(d) (attempts to conciliate) *with* 42 U.S.C. § 2000e–5(b) (same); Conn.Gen.Stat. § 46a–82(e) (180–day time limit to file complaint) *with* 42 U.S.C. § 2000e–5(b) (same). *See also* Conn.Gen.Stat. § 4–183(f) (no right to trial by jury); *Novotny,* 442 U.S. at 375 n. 19, 99 S.Ct. at 2350 n. 19 (collecting cases holding that there is no right to trial by jury in Title VII cases). For the same reasons that a majority of the Supreme Court in *Novotny* held that Title VII claims are not actionable under § 1985(3), we believe that § 1985(3) should not be construed so as to permit an end run around the administrative procedures established by the Connecticut Act. To paraphrase the Supreme Court's holding in *Novotny,* if claims under the Connecticut Act were actionable under § 1985(3), the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by the Connecticut legislature. We therefore hold that § 1985(3) does not apply to private conspiracies to violate the Connecticut Human Rights and Opportunities Act.

To summarize, we hold that 42 U.S.C. § 1985(3) does not provide a remedy for injuries resulting from a private conspiracy to deprive a person or persons of the equal protection of, or equal privileges and immunities under, the public accommodations provision of the Connecticut Human Rights and Opportunities Act, Conn.Gen.Stat. § 46a–64, because, like Title VII, the Connecticut Act establishes "a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims." *Novotny,* 442 U.S. at 372–73, 99 S.Ct. at 2349. Accordingly, we do not reach the broader issues of whether *some* private conspiracies to violate state law are remediable under § 1985(3), or whether appellants have adequately alleged a violation of Connecticut law.

The judgment of the district court is affirmed.