John Dimon Corporation, Respondent, *v.* Federal Sugar Refining Company, Appellant.

First Department, December 18, 1925.

Sales — action by buyer for anticipatory breach — after contract was duly executed seller refused to perform unless buyer would procure guaranty of payment — contract did not provide therefor — action of seller constituted anticipatory breach — measure of damages under Personal Property Law, § 148, is difference between contract price and market or current price at time and place of delivery — error to limit damages to difference within reasonable time after breach.

A seller of goods commits an anticipatory breach of the contract of sale where, after the contract is duly executed, it notifies the buyer that it will not perform the contract unless the buyer procures a guaranty of payment, and the contract, itself, does not provide for any guaranty of payment or give the seller the right to fix the terms of credit other than as stated in the contract.

In an action by a buyer to recover damages for the anticipatory breach of a contract for the sale of goods, the measure of damages is, under section 148 of the Personal Property Law, where there is an available market for the goods in question, the difference between the contract price and the market or current price of the goods at the time when they would have been delivered if the contract had been performed.

Accordingly, it is error, where the time for performance is fixed by the contract, to limit the damages to the difference between the contract price and the market value within a reasonable period after the date of the breach and to exclude as a basis of damages the consideration of testimony of the market price of the goods during the period when they should have been delivered under the terms of the contract.

Appeal by the defendant, Federal Sugar Refining Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of March, 1925, upon the verdict of a jury.

*Ernest A. Bigelow* [*Harold D. Beatty* with him on the brief], for the appellant.

*MacKinstry & Kornfeld* [*Everett MacKinstry* of counsel; *Jacob M. Kornfeld* with him on the brief], for the respondent.

Finch, J. The plaintiff sued for damages claimed because of the anticipatory breach by the defendant of two contracts for the purchase and sale of sugar. The first cause of action is based upon a written contract dated August 1, 1922, providing for the sale by defendant to plaintiff of 200 long tons of sugar at five cents per pound, shipment to be made during the second half of September, 1922. The second cause of action is based upon a written contract dated July 27, 1922, providing for the sale by the defendant to plaintiff of 300 long tons of sugar at five cents per pound, to be shipped

during the first half of September, 1922. The plaintiff claims that on or about August 7, 1922, the defendant repudiated and breached the contract, and claimed damages based on the market value of the sugar at the time of such breach. The defendant denied the breach and set up a counterclaim against each cause of action for alleged damages incurred by reason of the plaintiff's failure to furnish shipping instructions, as required by the provisions of the contract. The Trial Term found that there was an anticipatory breach by the defendant on August 9, 1922, dismissed the defendant's counterclaims and submitted to the jury only the amount of the plaintiff's damage, charging the jury that the plaintiff was entitled to recover the difference between the contract price at or within a reasonable time after August 9, 1922, and that September would not be a reasonable time after the breach occurred and, therefore, the testimony as to market values existing in the month of September should be disregarded. This appeal, therefore, presents but two questions, namely, whether there was an anticipatory breach of the contract by the defendant, and second, the correct measure of damages recoverable by reason of such a breach.

As noted, the contracts in question were entered into on July 27 and August 1, 1922, respectively. On August ninth the defendant demanded of plaintiff a guaranty of payment and on the same day wrote to the plaintiff the following letter:

" *August* 9, 1922.

" Messrs. JOHN DIMON CORPORATION,
     " 39 Cortlandt Street,
          " New York, N. Y.:

" GENTLEMEN.— Pursuant to the writer's conversation with your Mr. Dimon this morning with reference to contracts No. 503-X, July 27, 300 tons, 504-X, August 1, 200 tons, we beg to confirm statement made that these contracts were booked with the reservation of credit investigation in both cases. Credit investigation so far develops the fact that these contracts cannot be accepted in their present form without some further guarantee as to payment.

" Should we not hear from you with some satisfactory guarantee by three o'clock this afternoon, beg to advise that these contracts will be deemed cancelled.

" Very truly yours,
" FEDERAL SUGAR REFINING CO.
" H. C. SCRYMSER
" *General Sales Manager.*"

The contracts between the parties provided that payment was to be made against shipping documents. The contracts had been

duly confirmed in writing by the defendant. The above letter, therefore, was in effect a threat to cancel the contract within a given time unless the plaintiff complied with a demand, which the defendant was not entitled to make. Upon the receipt of the aforesaid letter, John Dimon, on behalf of the plaintiff, called on the defendant and saw Mr. Scrymser in reference to the letter. Mr. Dimon testified: " I asked Mr. Scrymser what was that letter meant about. * * * I mean first I said, ' What do you want? ' He says, ' Want whatever that letter says, either the equivalent of the amount of the order or a banker's guarantee or some kind of security,' which of course I told him I would not do, I would not give. * * * I told him that * * * I would not care to change the terms, that I have to insist upon the contract being carried through. Q. Did he say what he would do? A. He told me nothing at all but cancel the contract if he does not get that by three o'clock as the letter provided."

Thereafter nothing was done by either party until this suit was instituted in January, 1923, by the plaintiff. It thus appears that the only result of Mr. Dimon's call on the defendant was that the latter reiterated its intention to cancel the contract in the event the guaranty of payment demanded, and which the plaintiff refused to give, was not forthcoming by three o'clock. The defendant thus not only repudiated the terms of the contract, but deliberately and formally canceled the same. There is no question of keeping the contract alive involved herein, since there was an unqualified refusal of the plaintiff to accede to the defendant's demand, and the defendant's last word was that the contract would be canceled if the guaranty was not furnished by three o'clock in accordance with the terms of the letter, and no guaranty was furnished.

In so far as concerns the measure of damage to which the plaintiff is entitled, this should be the difference between the contract price and the market price of the goods at the time when the same were deliverable under the terms of the contract. Section 148 of the Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sales of Goods Act, provides as follows:

" 1. Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery. * * *

" 3. Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the

goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

In *Perkins* v. *Minford* (235 N. Y. 301) the rule is stated as follows: " The buyer's measure of damages is the loss directly and naturally resulting to him in the usual course of events because of the seller's breach of contract. Generally that is fixed by the difference between the contract and the market price at the time and place when and where the delivery should have been made."

A very clear exposition of the rule is stated by Mr. Williston in his work on Sales (2d ed. § 587): " Measure of damages for anticipatory breach. The character of the breach cannot change the nature of the contract, and the damages must, therefore, be what the injured party suffered or is likely to suffer because of the failure of the defendant to perform at the time he agreed to do so. If that time arrives before the trial of the case, there is no difficulty in determining what the cost of value of performance by the plaintiff at that time was, and this must be deducted from the contract price. If the trial takes place before that time, the jury must estimate as best they can what the future situation is likely to be. In any event though the plaintiff may bring his action at once, his damages must be based on the cost or value of performance at the time fixed by the contract for that performance, not at the time of the breach. By no reasoning can the contract be treated as a contract to deliver goods at the date of the repudiation."

It was error, therefore, to limit the damages to market value within a reasonable period following the date of the breach and to exclude as a basis of such damage the consideration of the testimony of the market price of the goods during the period when they should have been delivered under the terms of the contract. It follows that the judgment in so far as it dismissed the counterclaims should be affirmed, and in other respects reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Judgment appealed from in so far as it dismissed the counterclaims affirmed, and in other respects reversed and a new trial granted, with costs to the appellant to abide the event.