YORK AGENTS, INC., Respondent, *v.* BETHLEHEM STEEL CORPORATION, Appellant.

First Department, February 18, 1971.

*John R. Hupper* of counsel (*John Linsenmeyer* and *David W. Cohen* with him on the brief; *Cravath, Swaine & Moore*, attorneys), for appellant.

*Arthur M. Becker* of counsel (*Thomas B. Bracken* and *Robert H. Huey* with him on the brief; *Mudge Rose Guthrie & Alexander*, attorneys), for respondent.

NUNEZ, J. The defendant appeals from an order entered in New York County (LEVEY, J.) on July 2, 1970, granting summary judgment to the plaintiff on the issue of liability only and denying defendant's cross motion for the same relief.

The pertinent facts in this litigation are sufficiently stated in the dissenting opinion and need not be repeated herein. We agree with Justice STEUER that referral to a private Referee to determine whether the papers submitted disclosed any triable issue was unwarranted. The referred question should have been determined by Special Term in the first instance. But the reference proceeded on consent of experienced, knowledgeable counsel.

We are in unanimous agreement on one of the major contentions relied upon by the defendant on this appeal: that the May 24, 1966 letter, prepared by the defendant, constitutes a valid contract containing all material terms and repeatedly recognized as a valid contract by the defendant. We disagree as to the only other major issue raised on this appeal: whether by the December 19, 1966 letter the defendant repudiated its obligations under the May 24 agreement, endeavoring to extricate itself from a bad bargain. We conclude as a matter of law that

such was the case. The repudiation was unilateral and for a legally unacceptable reason — the desire to avoid a lawsuit. We quote in part from Bethlehem's letter to plaintiff: "you have seen fit to transfer the controversy concerning 'Sabine' into the courts. * * * .

"Under the circumstances, we think it is totally unrealistic for either party to assert that the other party is bound by a contract in respect to 'Midlake' and is withholding performance, causing damages to the other party, etc. If 'Midlake' is to be converted at our Yard * * * despite the lack of agreement on 'Sabine', it is essential that an agreement be reached * * * setting forth precisely what work is to be done, how much is to be paid (and when) and the date for completion. * * * To the extent that agreements on 'Midlake' can be reached * * * whatever work you want performed will be done.

"We attach a proposal."

As clearly appears, Bethlehem declared that it did not consider itself bound by the May 24 agreement and that it would proceed with the conversion of the *Midlake* only if a new agreement was signed by the parties. This was an unqualified repudiation of the May 24 agreement. (See *Wester* v. *Casein Co. of Amer.*, 206 N. Y. 506; *Dimon Corp.* v. *Federal Sugar Refining Co.*, 215 App. Div. 140 [1st Dept., 1925].)

The December 19 proposal called for higher prices for many items including materials and insurance, and extended the time for completion of the work. It also provided for progress payments, whereas the May 24 contract provided for payment on delivery (as in *Sabine*), and permitted revision only if "any increase in *labor*" occurred. (Italics mine.) Furthermore, there is no evidence in the record of any request by Bethlehem to York for agreement with respect to extras, removals, replacements and changes as a condition to proceed to convert the *Midlake*. The record justifies the Referee's findings that Bethlehem sought to impose a new agreement upon York with new prices and new date of completion, and categorically denied that the May 24 agreement was binding upon it. Bethlehem's repudiation of the May 24 agreement and its insistence upon a new contract are further evidenced by a memorandum from its credit manager to the general manager of its shipbuilding yard dated October 26, 1966 stating in its pertinent part: "We wish to confirm * * * that no work will be done on the above jumboization *until a firm contract has been signed* with agreed progress payment terms". (Italics added.) Indeed, it was con-

ceded on oral argument that what Bethlehem sought was a new contract.

We have examined the other points raised by appellant and find no merit in any of them. It is clear that the phrase "it appearing that the findings and conclusions of the Referee accord with the preponderance of the evidence adduced at the hearing" was inadvertently inserted in the order which was submitted for settlement on notice. Defendant did not object to the order. The court's attention was not called to the objectionable standard of proof. The point is raised for the first time on appeal. It clearly appears that Special Term confirmed the conclusion of the Referee's report that the letter of May 24, 1966 constitutes a valid contract, that the letter of December 19, 1966 was a repudiation of the May 24 agreement, and that no triable issue of fact exists other than the extent of damages. The "jumboization" of the record resulted from the combined activity of both parties and its mere size is not indicative of the existence of any triable fact issues.

The order should be affirmed with costs and disbursements to respondent.

STEUER, J. (dissenting). The motion for summary judgment comes to this court on a record consisting of three large volumes. It would appear that if the case presented no triable issue the demonstration would be made in a small fraction of the words used.

Plaintiff corporation is the owner of a ship. The corporation is one of several owned and controlled by Samuel Wang. During the course of the transactions basing the action, different corporations appeared as transacting parties but there was no question as to the party in interest, and the facts will be considered as if only one of these corporations were involved.

In January, 1966 plaintiff, owner of the *Sabine,* a cargo vessel, desired to have it "jumboized". This is a process by which a portion of the hull is cut from another ship and inserted, thereby increasing the length, and to some extent the width, of the ship. To this end plaintiff delivered the *Sabine* and the ship whose part was to be used, the *Isidora*. A detailed contract was entered into on March 3, 1966, specifying 61 items of work which would comprise the operation. Forty of these items were at a fixed price, 16 were on a unit basis with fixed prices according to the amount of materials used, 4 were on a cost plus basis with certain portions on a unit basis, and 1 was left for future negotiation. The estimated over-all cost was $800,000.

On May 24, 1966, plaintiff desired a like job to be done in regard to another ship, the *Midlake*. As to this ship a short contract was signed between the parties to provide for "jumboizing" that vessel, using the body of a ship called the *Isara*. The contract provided that the work to be done was "similar to that being done for you on the SS 'Sabine'". It further provided that the prices would be "equivalent to those on the SS 'Sabine', where applicable, subject however to any increase in labor which may occur after July 31, 1966." The latter date was that on which it was contemplated the SS *Sabine* conversion would be completed and the material work on the SS *Midlake* begun.

Due to a strike, however, the work on the *Sabine* was not completed until the middle of October. Shortly prior to that date the defendant estimated that the cost would amount to about $1,125,000, which figure the plaintiff did not then dispute. However, the defendant presented a bill for $1,600,000. After some negotiation defendant agreed to release the *Sabine* upon a payment of $800,000 in cash, a check for $200,000 payable in 15 days, and a mortgage of $250,000 on the *Midlake*, enforceable after 60 days. All payments were to be without prejudice to the rights of either party. In the meantime the parties were to seek to dispose of their differences and work on the *Midlake* was to proceed.

The parties did not resolve their differences. On the part of the defendant it was asserted that change orders vastly increased the amount of work. Plaintiff denied this, challenging the validity of certain of the alleged change orders and asserting that in many cases they represented only what was an obligation of the original contract. It was also asserted that charges for materials in unit price operations were duplicated to an extent of $200,000. On the expiration of the 60 days plaintiff notified the defendant in writing that it was maintaining its position and would seek relief in the courts. The letter further referred to certain drafts submitted to defendant in the nature of detailed specifications of the work to be done on the *Midlake* and said there was no necessity for considering these as there was already a firm contract between the parties and nothing further was required.

Defendant replied that it had appeared to defendant there was a firm contract in regard to the *Sabine* whereas it now appeared that there was a lack of understanding. Under these circumstances, the letter said it was "unrealistic for either party to assert that the other is bound by a contract in respect to MIDLAKE." It suggested a detailed agreement as to the work

to be done and, when that was reached, whatever work was to be performed would be done.

On this motion for summary judgment, the defendant relies on two major issues. The first is whether the letter of May 24, 1966, qualifies as a contract, and the second is whether the letter of December 19 is to be deemed a repudiation of that contract.

On the first question I am in agreement with the majority of the Bench that the letter did constitute a binding contract. It is neither vague nor indefinite. Both parties repeatedly referred to it as a binding obligation and there is no doubt that defendant was well aware of what it was undertaking and plaintiff of what it would have to pay. In this connection it should be pointed out that the *Sabine* and the *Midlake* were sister ships, as were the *Isidora* and *Isara*. In a general way the work would be the same. True, since these vessels were 30 years old, with consequent difference in experience, their respective conditions would not be expected to be identical, but no material difference was contemplated, nor has any been called to our attention. The subsequent difficulties of the parties in regard to interpretation of the *Sabine* contract do not affect this. The correct interpretation would apply to both.

As regards the character of the December 19 letter, I am not in accord with the majority. I believe that reasonable minds could differ as to whether this writing amounts to an outright repudiation. In the light of the circumstances it would hardly seem reasonable for a party to go through a job of this magnitude with the almost certain prospect of a lawsuit at the completion.* It would be more prudent and feasible to resolve such differences as the experience of the related undertaking had shown to exist. While the letter in question does contain a vigorous exposition of this contention and contains language that could be construed as negating the existence of a binding contract, nowhere is there an unequivocal refusal to perform. In seeking such a clarification defendant was entirely within its rights (cf. 3A Corbin, Contracts, § 696). For this reason summary judgment should be denied.

Plaintiff has argued with some force that the real reason for defendant's conduct was that while the May 24 contract provided for an adjustment of labor costs it made no provision for the cost of materials. Consequently, it is claimed, defendant was in fact trying to relieve itself of a bad bargain. While this may well be true, it is a factual question not determinable upon this application, though it probably induced the court's oversight in referring to the preponderance of evidence being with the plaintiff.

---

* A suit is now pending on the *Sabine* contract.

It is also argued in accord with the above that a trial would be a foregone conclusion and unnecessarily burden the court. That is not so. The order merely determines liability. The issue of damages will entail a presentation of much of the same proof and will in addition entail a much more extensive presentation.

One further matter deserves note. The court referred the question of whether the papers submitted on the motion disclosed any triable issue to a private Referee. As this was done with the consent of the parties it presents no ground for disturbing the conclusion reached. However, this court would be remiss if it did not point out that this is an improper practice, and the question should have been determined by the court in the first instance. No lawyer should be put in the position of having to object to any such suggestion.

The order of July 2, 1970, should be reversed and the case remanded for trial.

McGivern, J. P., and Markewich, J., concur with Nunez, J.; Steuer, J., dissents in opinion.

Order, Supreme Court, New York County, entered on July 2, 1970, affirmed. Respondent shall recover of appellant $50 costs and disbursements of this appeal.

