Edward J. KIERNAN et al., Plaintiffs,

v.

John V. LINDSAY, as Mayor of the City of New York, et al., Defendants.

No. 71 Civ. 2978 D.N.E.

United States District Court,
S. D. New York.

Nov. 24, 1971.

Stanley D. Halperin, Charles Ballon, Kenneth D. Burrows, Phillips Nizer, Benjamin, Krim & Ballon, New York City, of counsel, for plaintiffs.

William M. Murphy, Ossining, N. Y. (J. Lee Rankin, Corporation Counsel for City of New York, James Nespole, New York City, Jesse Levine, Jay Kranis,

New York City, of counsel), for defendants.

Daniel M. Cohen, New York City (Louis J. Lefkowitz, Atty. Gen. State of New York, of counsel) intervenor, pro se.

Before MULLIGAN, Circuit Judge, EDELSTEIN, Chief Judge, District Court and BRYAN, District Judge.

MULLIGAN, Circuit Judge:

The plaintiffs, New York City patrolmen suing on behalf of themselves and others similarly situated, bring this action seeking a declaratory judgment of unconstitutionality and an injunction against the enforcement of New York Civil Service Law § 210(2) (McKinney's Consol.Laws, c. 7, Supp.1970) on the ground that the section is violative of the fourteenth amendment to the United States Constitution.

The defendants, the City of New York and a number of its officials crossmoved to dismiss pursuant to Rule 12(b) (1) and (6) of the Federal Rules of Civil Procedure on the grounds that the court lacks jurisdiction over the subject matter of the action, and that the complaint fails to state a claim upon which relief can be granted. In their briefs they also argued that even if the court should find that jurisdiction exists, it should abstain from exercising it in this case.

The action arose out of a violation of the Taylor Law, N.Y. Civil Service Law § 210 (McKinney Supp.1970) [1] consist-

---

1. Section 210 as relevant to this case provides:

1. No public employee or employee organization shall engage in a strike, and no public employee or employee organization shall cause, instigate, encourage, or condone a strike.

2. Violations and penalties; presumption; prohibition against consent to strike; determination; notice; probation; payroll deductions; objections; and restoration. (a) Violations and penalties. A public employee shall violate this subdivision by engaging in a strike or violating paragraph (c) of this subdivision and shall be liable as provided in this subdivision pursuant to the procedures contained herein. In addition, any public employee who violates subdivision one of this section may be subject to removal or other disciplinary action provided by law for misconduct.

(b) Presumption. For purposes of this subdivision an employee who is absent from work without permission, or who abstains wholly or in part from the full performance of his duties in his normal manner without permission, on the date or dates when a strike occurs, shall be presumed to have engaged in such strike on such date or dates.

(c) Prohibition against consent to strike. No person exercising on behalf of any public employer any authority, supervision or direction over any public employee shall have the power to authorize, approve, condone or consent to a strike, or the engaging in a strike, by one or more public employees, and such per-

son shall not authorize, approve, condone or consent to such strike or engagement.

(d) Determination. In the event that it appears that a violation of this subdivision may have occurred, the chief executive officer of the government involved shall, on the basis of such investigation and affidavits as he may deem appropriate, determine whether or not such violation has occurred and the date or dates of such violation. If the chief executive officer determines that such violation has occurred, he shall further determine, on the basis of such further investigation and affidavits as he may deem appropriate, the names of employees who committed such violation and the date or dates thereof. Such determination shall not be deemed to be final until the completion of the procedures provided for in this subdivision.

(e) Notice. The chief executive officer shall forthwith notify each employee that he has been found to have committed such violation the date or dates thereof and of his right to object to such determination pursuant to paragraph (h) of this subdivision; he shall also notify the chief fiscal officer of the names of all such employees and of the total number of days, or part thereof, on which it has been determined that such violation occurred. Notice to each employee shall be by personal service or by certified mail to his last address filed by him with his employer.

(f) Probation. Notwithstanding any inconsistent provision of law, any public employee who has been determined to

ing of an alleged six-day strike by New York City policemen in January, 1971. Following the procedures mandated by that law, the Mayor of the City of New York determined that specific patrolmen in the New York City Police Department had violated the Taylor Law on one or more of the six days on which the strike occurred (January 14–19, 1971). He imposed the penalties prescribed by Civil Service Law § 210(2) and notified each of the offending patrolmen that he would be on probation, serving without tenure, for a period of one year, and that the City Comptroller, having been notified of the Mayor's determination, would deduct from the compensation of such patrolman two days pay for each day he was determined to be absent in violation of the law. At the time that this case was argued the deductions from compensation had been made, and the probationary period had commenced.

Under the provisions of § 210(2) (h) every patrolman who received such notice may file an objection with the Mayor stating why he believes that the determination was incorrect. Virtually all

have violated this subdivision shall be on probation for a term of one year following such determination during which period he shall serve without tenure; provided, however, that the effect of probation hereunder with regard to teachers and others subject to the education law shall not exceed or differ from the effect of probation hereunder with regard to other public employees.

(g) Payroll deductions. Not earlier than thirty nor later than ninety days following the date of such determination, the chief fiscal officer of the government involved shall deduct from the compensation of each such public employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision; such rate of pay to be computed as of the time of such violation. In computing such deduction, credit shall be allowed for amounts already withheld from such employee's compensation on account of his absence from work or other withholding of services on such day or days. In computing the aforesaid thirty to ninety day period of time following the determination of a violation pursuant to subdivision (d) of paragraph two of this section and where the employee's annual compensation is paid over a period of time which is less than fifty-two weeks, that period of time between the last day of the last payroll period of the employment term in which the violation occurred and the first day of the first payroll period of the next succeeding employment term shall be disregarded and not counted.

(h) Objections and restoration. Any employee determined to have violated this subdivision may object to such determination by filing with the chief executive officer, (within twenty days of the date on which notice was served or mailed to him pursuant to paragraph (e) of this subdivision) his sworn affidavit, supported by available documentary proof, containing a short and plain statement of the facts upon which he relies to show that such determination was incorrect. Such affidavit shall be subject to the penalties of perjury. If the chief executive officer shall determine that the affidavit and supporting proof establishes that the employee did not violate this subdivision, he shall sustain the objection. If the chief executive officer shall determine that the affidavit and supporting proof fails to establish that the employee did not violate this subdivision, he shall dismiss the objection and so notify the employee. If the chief executive officer shall determine that the affidavit and supporting proof raises a question of fact which, if resolved in favor of the employee, would establish that the employee did not violate this subdivision, he shall appoint a hearing officer to determine whether in fact the employee did violate this subdivision after a hearing at which such employee shall bear the burden of proof. If the hearing officer shall determine that the employee failed to establish that he did not violate this subdivision, the chief executive officer shall so notify the employee. If the chief executive officer sustains an objection or the hearing officer determines on a preponderance of the evidence that such employee did not violate this subdivision, the chief executive officer shall forthwith restore to the employee the tenure suspended pursuant to paragraph (f) of this subdivision, and notify the chief fiscal officer who shall thereupon cease all further deductions and refund any deductions previously made pursuant to this subdivision. The determinations provided in this paragraph shall be reviewable pursuant to article seventy-eight of the civil practice law and rules.*

* Subdivisions (e) and (g) were recently amended in C.503 § 10 (1971) McKinney's N.Y.Sess.Laws.

of the 21,000 patrolmen involved have filed an objection. Based solely on the affidavit submitted, the Mayor may sustain or deny the objection. However, if a question of fact arises, a hearing will be held at which the patrolman must demonstrate by a preponderance of the evidence that he did not violate the section. All these determinations are judicially reviewable pursuant to article Seventy-Eight of the Civil Practice Law & Rules. N.Y. Civil Service Law § 210(2) (h) (McKinney Supp.1970). Both sides concede that if a hearing were to be held for each of the 21,000 patrolmen, it would take an extremely long time to complete the procedure, and it is possible that the last man would not be heard until some years after the one year probation period had expired.

It is the imposition of the pay and probationary penalties without a prior adversary hearing which the plaintiffs principally claim to be a deprivation of due proceeds of law as guaranteed by the fourteenth amendment of the United States Constitution.

At the plaintiffs' request, a three-judge court was convened pursuant to 28 U.S.C. § 2282 and § 2284. Since the motion papers were supplemented by affidavits, the matter was treated as a motion for summary judgment, Fed.R. Civ. Proc. 12(c), and argument was heard on the merits and on the jurisdictional and abstention objections. We shall first examine the jurisdictional questions.

Plaintiffs contend that this court has jurisdiction over their claims for injunctive relief and for declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202 under both 28 U.S.C. § 1331, general federal question jurisdiction and 28 U.S.C. § 1343(3), which confers original jurisdiction on the district courts over cases involving a deprivation of the privileges and immunities protected in 42 U.S.C. § 1983. We shall consider the jurisdictional bases separately.

Section 1331

Title 28 U.S.C. § 1331(a) is the general federal question statute. It requires not only that the suit arise under the Constitution, laws or treaties of the United States, but also that the "matter in controversy" exceed "the sum or value of $10,000." Since a resolution of plaintiffs' claim that the imposition of the Taylor Law penalties without a prior hearing is a deprivation of due process of law depends entirely on the construction of the fourteenth amendment of the Constitution, there can be no dispute that a federal question is involved.

Defendants do claim, however, that the plaintiffs, despite the allegations in their complaint, have failed to demonstrate that the amount in controversy exceeds $10,000, and therefore no jurisdiction exists. In determining the question we must examine the various penalties imposed to see if the monetary requirement has been met.

Civil Service Law § 210(2) (g) provides that any public employee determined to have participated in an illegal strike "shall [have] deduct[ed] from [his] compensation * * * an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision." Since the strike in question lasted only six days, the highest actual monetary loss to be suffered by any individual patrolman, under this aspect of the statutory penalties, is conceded by the plaintiffs to be only $600. Since the individual patrolmen cannot aggregate their claims in order to reach the $10,000 requirement, Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Hague v. C I O, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Local 1497, National Federation of Federal Employees v. City and County of Denver, 301 F.Supp. 1108 (D.Colo.), appeal dismissed, 396 U.S. 273, 90 S.Ct. 561, 24 L.Ed.2d 464 (1969), it is apparent that the monetary penalty alone will not support § 1331 jurisdiction.

If the jurisdictional monetary amount is to be satisfied, it must be based on a valuation of that portion of the Taylor Law penalties which provides that a

public employee determined to have been engaged in an illegal strike will be placed "on probation for a term of one year following such determination during which period he shall serve without tenure." N.Y. Civil Service Law § 210(2) (f) (McKinney Supp.1970). The meaning and effect of this provision is hotly disputed by the parties.

■ The defendants maintain that the two terms "probation" and service "without tenure" are synonymous and that the sole consequence of this sanction is that the patrolman loses the right to an adversary hearing before dismissal under § 434a–14.0 of the Administrative Code of the City of New York if there is a charge of misconduct after he has been placed on probation. The Corporation Counsel has taken the position on behalf of the City that there has been and will be no adverse effect on plaintiffs' rights to promotion, retirement, sick leave, health insurance or any other fringe benefit to which he might otherwise be entitled. In fact, numerous patrolmen on Taylor Law probation have been promoted according to the City and this does not seem to be contested. The plaintiffs on the other hand equate the probation under the Taylor Law with that defined in § 63 of the Civil Service Law under which the test for dismissal is the suitability and fitness of a new appointee or promotee for the position he occupies as a probationer. This they claim gives the Commissioner of Police absolute and unfettered discretion to determine at any time that a Taylor Law probationer is unfit for future employment for any reason. This of course would jeopardize the patrolman's livelihood and all of the benefits he had acquired during his tenure.

In determining the attributes of Taylor Law probation, we are not assisted by any case in New York State which has decided or even considered the question [2]. However, we are persuaded that the failure of the New York legislators to repeat the language of the prior Condon-Wadlin Act (C. 790, § 108(5) (c) (1958) McKinney's N.Y.Sess.Laws 1008 (repealed 1967)) which provided that the probationer had to serve without tenure "and at the pleasure of the appointing officer or body" was significant without clear and unmistakable language to the contrary we would hesitate to construe the statute to permit the obliteration of benefits accrued during years of service by administrative whim. The posture of the City in this case negates any such Draconian approach, and we cannot reasonably conclude at this juncture that this probation entails anything more than the loss of the right to a hearing prior to discharge for misconduct during the probationary period. Certaintly the plaintiffs have not demonstrated by a preponderance of the evidence that the drastic interpretation they urge is justified under state law. In a comparable situation Chief Judge Lumbard's caution is most appropriate, "In addressing this question of state law * * * the role of a federal court is a modest one." United States ex rel. Herrington v. Mancusi, 415 F.2d 205, 209 (2d Cir. 1969).

■ Our next inquiry must of course be whether this one year suspension of tenure meets the $10,000 test of § 1331. In an equity action initiated in a federal court, the plaintiffs have the burden of establishing by a preponderance of the evidence that they have satisfied the jurisdictional requirement.

---

2. While the New York Courts have considered and rejected the due process objections raised here with respect to the deductions from compensation penalty, Lawson v. Board of Educ., 62 Misc.2d 281, 307 N.Y.S.2d 333 (1970), aff'd. 35 A.D. 2d 878, 315 N.Y.S.2d 877 (1970) leave to appeal denied, 28 N.Y.2d 485, 321 N.Y.S.2d 1025, 269 N.E.2d 834 (1971), appeal dismissed, 404 U.S. 907, 92 S.Ct. 230, 30 L.Ed.2d 180 (U.S. Oct. 26, 1971) ; Zeluck v. Board of Educ., 62 Misc.2d 274, 307 N.Y.S.2d 329 (1970), aff'd 36 A.D.2d 65, 319 N.Y.S.2d 409 (1971), no court has passed upon the meaning or validity of the suspension of tenure penalty.

McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)[3]. Moreover, plaintiffs do not meet this burden if the right they seek to protect is incapable of monetary valuation. "It is firmly settled law that cases involving rights not capable of valuation in money may not be heard in federal courts where the applicable jurisdictional statute requires that the matter in controversy exceed a certain number of dollars. The rule was laid down in Barry v. Mercein, 46 U.S. (5 How.) 103, 12 L.Ed. 70 * * * 'The words of the act of Congress are plain and unambiguous * * *. There are no words in the law, which by any just interpretation can be held to * * * authorize us to take cognizance of cases to which no test of money value can be applied.' 46 U.S. at 120.", Boyd v. Clark, 287 F.Supp. 561, 564 (S.D.N.Y. 1968), aff'd without consideration of the jurisdictional question, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969). See Rosado v. Wyman, 414 F.2d 170, 176–177 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir.), cert. denied, 400 U.S. 960, 91 S.Ct. 353, 27 L. Ed.2d 270 (1970); Post v. Payton, 323 F.Supp. 799, 804 (E.D.N.Y.1971); Ackerman v. Columbia Broadcasting System, 301 F.Supp. 628, 633–634 (S.D.N.Y. 1969).

Plaintiffs urge that even though their rights may be intangible, there should be no difficulty in determining that their monetary value exceeds the jurisdictional requirement. The cases relied upon are distinguishable. For example, in Gobitis v. Minersville School District, 24 F.Supp. 271 (E.D.Pa.1938), aff'd, 108 F.2d 683 (3rd Cir. 1939), rev'd on other grounds, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940) plaintiffs' children were denied the right to attend public school because of their refusal to salute the flag. The alleged right not to salute could be measured "by the cost of obtaining an equivalent education at private institutions." 24 F.Supp. at 275. In City of Memphis v. Ingram, 195 F.2d 338 (8th Cir. 1952), a municipal corporation in Tennessee sought to enjoin a county officer in another state from the demolition of a bridge and roadways to it in Arkansas. While exact valuation of the pecuniary loss was not required, the initial cost of the approach roadways and the bridge were found to far exceed the jurisdictional level. Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L. Ed.2d 75 (1970), involved an action by a landlord against a city rent and rehabilitation director challenging the constitu-

---

3. Plaintiffs rely on St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), for the proposition that their good faith allegation of jurisdictional amount must be accepted prima facie unless it appears to a legal certainty that a lesser sum is in controversy. *Red Cab* was an unliquidated damage action originally commenced in state court and removed, upon the defendant's application, to the federal district court. The plaintiff's state court complaint sought an amount in excess of that required for federal jurisdiction. To defeat the removal, the plaintiff amended its complaint to demand an amount less than the federal jurisdictional requirement. The Supreme Court held that such a ploy could not be used to defeat federal jurisdiction. Once established, the subject matter jurisdiction of a court cannot be destroyed by the unilateral activity of any party. Absent this rule, the "statutory right of removal would be subject to the plaintiff's caprice." (Id. at 294, 58 S.Ct. at 593). The court emphasized the strong presumption that the amount originally sought in the state court was valid since there was obviously no motive to inflate for purposes of federal jurisdiction. It is dubious whether two parties would seek to enter the federal courts by the tortured and roundabout process of removal.

*Red Cab* is inapposite to the present case—the relief sought here is essentially equitable in nature and in effect (See Samuels v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); the res is of indeterminable value; and the action was originally commenced in this court.

tionality of the rent control law. The court found that the controversy involved the value of two buildings free from rent control as against being subject to control and the capitalized value of the rent reduction far exceeded the $10,000 limitation. Those cases all involved the application of formulae which could reasonably calibrate the matter in controversy in dollars. There is no possible norm to measure in dollars the injury flowing from the suspension of tenure for one year.

A second category of cases involving actual discharge of employees, Martin v. Ethyl, Corp. 341 F.2d 1 (5th Cir. 1965); actual expulsion from a union, Giordano v. RCA, 183 F.2d 558 (3d Cir. 1950), Friedman v. International Ass'n of Machinists, 95 U.S.App.D.C. 128, 220 F.2d 808 (D.C.Cir.), cert. denied, 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736 (1955), or an actual loss of pension funds, George v. Lewis, 228 F.Supp. 725 (D. Colo.1964) are equally unavailing since all have involved an actual rather than a potential loss of money. Here, no actual loss occurs until misconduct is charged and a dismissal takes place. There is no allegation or suggestion that such has even been threatened.

Finally, plaintiffs' reliance on cases such as Berk v. Laird, 429 F.2d 302 (2d Cir. 1970), where injunctive relief against federal officers is sought, is also unavailing here. In such cases there is no state remedy and the plaintiff would have been without redress unless the federal forum were provided. This facet of the jurisdictional problem was emphasized by Judge Edelstein in his dissenting opinion in Boyd v. Clark, *supra*, 287 F.Supp. at 567–569; See also Cortright v. Resor, 325 F.Supp. 797, 808–811 (E.D.N.Y. 1971), rev'd on other grounds, 447 F.2d 245 (2d Cir. 1971). That the state courts in New York could entertain this action is not questioned here. That they should, will be developed infra. In cases where the state has concurrent jurisdiction, the jurisdictional requirement of $10,000 should be strictly construed. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1933).

Plaintiffs have failed to demonstrate that the New York courts would construe the Taylor Law in accordance with their claims and thus have not sustained their burden of establishing that the monetary jurisdictional requirements of § 1331 have been met. We, therefore, conclude that we have no jurisdiction under that section.

Section 1343(3)

■ Plaintiffs also allege that the imposition of "probation" without a prior hearing is a deprivation of fourteenth amendment rights and therefore jurisdiction is conferred by 28 U.S.C. § 1343(3) which confers original jurisdiction over civil actions authorized by 42 U.S.C. § 1983. We believe that this is clearly not a case involving personal liberty within § 1343(3). This circuit has recently given full consideration to the question of the applicability of the statute to a discharge from public employment in Tichon v. Harder, 438 F.2d 1396 (2d Cir. 1971) where a newly appointed probationary case worker brought an action against state officials because of an alleged arbitrary dismissal without any hearing or notice of hearing. In finding no § 1343(3) jurisdiction the court found that her dismissal did not infringe upon any non-property rights protected by the first eight amendments, and "in the absence of a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation, it cannot be said that a right of personal liberty is involved." Id. at 1402. Here plaintiffs claim that the imposition of the penalties infringes upon their right to free speech and assemblage guaranteed by the first amendment. The mere allegation that the

power of dismissal "chills" first amendment rights without any substantiation in fact is not persuasive. We cannot assume an abuse of the power of dismissal without misconduct. In fact, as indicated above the announced position of the City is decidedly contrary. We see no evidence at all of any "chilling" effects except for the vague and conclusory statements of the complaint and affidavit not supported by any facts. We deem it to be too frivolous and unsubstantiated to support § 1343(3) jurisdiction. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1945).

Moreover, there can obviously be no "clear, immediate and substantial impact" on reputation so as to effectively destroy plaintiffs' ability to engage in their occupation. They have not been discharged. They have been fined and placed in an undefined probationary status. They are all working and some have even been promoted. We cannot read *Tichon* as limited to probationary employees. While the plaintiff in *Tichon* was probationary and had not achieved a professional reputation, the holding clearly requires a finding of an effective deprivation of livelihood looking to the circumstances of the dismissal and not the mere fact of dismissal in order to find an impact on personal liberty. In Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966) where 1343 jurisdiction was upheld, Dr. Birnbaum was discharged from the staff of a municipal hospital without a hearing. He was accused of anti-Negro bias, and all other municipal hospitals were advised and instructed not to hire him. It is clear that the discharge of even tenured municipal employees is by itself insufficient to give 1343 jurisdiction unless there are collateral circumstances establishing clear, effective and substantial obstacles to future employment such as the blackballing techniques employed in *Birnbaum*. The instant situation is clearly distinguishable and we find no 1343 jurisdiction. See Canty v. The Board of Education of the City of New York, 448 F.2d 428 (2d Cir. 1971).

Even though we have held that this court lacks jurisdiction of this matter, we further believe that even assuming it existed, we should abstain from exercising it here. While the doctrine of abstention has been narrowly limited, it is still applicable in two situations both of which are present here.

The first involves a case where the state statute is susceptible to a construction which would avoid or modify the constitutional question presented to the federal court for resolution. Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The constitutional question here is "due process" under the fourteenth amendment. We must recognize that the due process concept is not subject to precise definition or exact calibration.

As the Supreme Court has indicated in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960):

"[A]s a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account."

See also FCC v. WJR, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949); Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y. 1968), aff'd, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In this case, while there is no uncertainty as to the penalty of lost pay, we have pointed out there is no case which has even discussed the attributes of a Taylor Law probation. We have held that the plaintiffs have failed to establish by a preponderance of the evidence that it does

result in a deprival of benefits which have a monetary value, and hence we have no jurisdiction. More importantly, the metes and bounds of Taylor Law probation should be fixed by state court adjudication before we prematurely decide the sensitive constitutional issue of due process. United States ex rel. Herrington v. Mancusi, *supra*, 415 F.2d at 209. There is no question that New York has provided for a declaratory judgment remedy when the constitutionality of a state statute is challenged. N.Y.C.P.L.R. § 3001 (McKinney 1963). In addition to these differences as to the probationary sanction, the parties have disagreed in their briefs as to the scope of an Article 78 proceeding which the Taylor Law provides. (N.Y. Civil Service Law § 210(2) (h)). As a matter of fact, no Article 78 proceeding under this statute has been commenced by any offended public employee. To the extent therefore that the sanctions are defined and the scope of the Article 78 hearing is clarified in the state court, the constitutional question, if not avoided, will be modified. Coleman v. Ginsberg, 428 F. 2d 767 (2d Cir. 1970); see Note, Judicial Abstention from the Exercise of Federal Jurisdiction, 49 Colum.L.Rev. 749, 754 (1949).

The second recognized area for the application of the abstention doctrine occurs where the exercise of jurisdiction would disrupt state administrative processes. Zwickler v. Koota, 389 U.S. at 256, 88 S.Ct. at 399 (Harlan, J., concurring). The administrative process in this case involved the complex relationships between the State of New York and the public employees of that state. We should not unnecessarily intrude in such relationship. Coleman v. Ginsberg, *supra*, 428 F.2d at 769.

The Taylor Law is not a casual piece of state legislation. It presents a comprehensive, substantive and procedural program for determining the rights and obligations of public employees and their public employers. Its statement of policy is instructive. N.Y. Civil Service Law § 200:

"The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by * * * (e) continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibition."

It is clear that a most vital and sensitive part of the program involves the procedural due process to be provided in the event of a strike and the imposition of sanctions. As we have elaborated herein, a basic issue of the nature of the probation sanction has never been litigated in the state court. No case has arisen where the procedures for hearing and review have been put into effect. The state has set up an elaborate apparatus and no state litigation has tested it in action. We therefore believe that federal intervention is highly inappropriate. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

We conclude that we have no jurisdiction under either § 1331 or § 1343(3) and that in any event abstention should be our proper role.

We therefore grant judgment dismissing the complaint herein.

Dismissed.