■ ANDRE MARDON, Appellant, v WILLIAM SIMON, Respondent. — Order of the Supreme Court, New York County, entered March 26, 1980, denying plaintiff's motion for a preliminary injunction; granting defendant's cross motion to dismiss the complaint, and denying plaintiff's cross motion for summary judgment and for a permanent injunction modified, on the law, to the extent of reversing so much of the order as granted the cross motion dismissing the complaint and denying said cross motion; and otherwise affirmed, without costs. This action arises out of a contract under which defendant agreed to sell a co-operative apartment to plaintiff and another. The agreement fixed the closing date as January 25, 1980, and provided that the deposit was to be returned to the purchasers and the agreement terminated if purchasers did not obtain the specified mortgage loan commitment by January 20, or, if subsequent to the issuance of the commitment, the board of directors or the shareholders of the co-operative did not approve the sale. The agreement further provided that in the event the mortgage commitment was not obtained, the agreement could be canceled on five days' written notice given to the seller by the purchasers. On or about January 17, plaintiff notified defendant that the mortgage commitment had not yet been obtained and requested that his time to obtain the commitment be extended for a few days. He was informed that an extension was unnecessary at that time, since he could cancel the agreement by written notice served on January 20 if the mortgage commitment did not come through by that time. He was also told that, in any event, no extension would be granted. On January 23, a letter was hand delivered to plaintiff's counsel by defendant's attorneys referring to a telephone conversation had earlier that day in which, purportedly, the attorneys agreed to a cancellation of the contract. Plaintiff's attorney was requested to initial the photostatic copy to indicate his consent to this understanding. Enclosed with the letter was a check in the amount of the deposit made out to the purchasers. Plaintiff's attorney refused to signify his consent. At the bottom of the letter he appended the following handwritten note: "Cancellation of the contract was not with my consent, but unilaterally by the seller and contrary to our verbal understanding at the closing that additional time to get a commitment would be given. Receipt of the check is acknowledged". The letter, with the handwritten note thereon, was delivered to defendant's attorney the same day. The deposit check was also returned to seller's attorney. On January 24, plaintiff received the necessary mortgage commitment. In light of the letter of January 23, which plaintiff treated as an anticipatory breach of the contract of sale, defendant was not notified of the commitment nor did plaintiff appear for the closing on January 25. On January 26 defendant contracted to sell all the apartment to a third party. The same day defendant wrote to plaintiff asserting that the failure to obtain the loan commitment by January 20, 1980, terminated defendant's obligation under the agreement. The deposit check was again enclosed. This check is held by plaintiff's attorney pending the outcome of this

suit. At no time did plaintiff give defendant the written five-day notice specified in the agreement. Thereafter, plaintiff commenced this suit to enjoin defendant from selling the apartment to any third party and for specific performance of the contract of sale. Simultaneously therewith, he moved for a temporary injunction. Defendant cross-moved to dismiss the complaint and for summary judgment and plaintiff, in turn, cross-moved for summary judgment and a permanent injunction. Special Term granted defendant's cross motion to dismiss the complaint. It denied both plaintiff's motion and cross motion. It is plain from the agreement itself that the contract provision permitting cancellation in the event that the mortgage commitment was not obtained on or before January 20 was for the benefit of the purchaser. The contract was not automatically terminated by the failure to obtain the mortgage commitment. An additional element — a written notice served within five days after January 20, the commitment date — was necessary. If the purchaser so elected, he could have paid the entire purchase price in cash or he could have made up in cash the difference between the mortgage commitment obtained and the commitment contemplated in the agreement. In short, no right accrued to defendant to cancel the agreement by reason of plaintiff's failure to obtain the contemplated commitment by January 20. No writing by plaintiff or his attorney has been submitted canceling the agreement. The only writings relied on to establish such cancellation are the letters of January 23 (with the plaintiff's handwritten notation thereon) and January 26. We are aware of the contract provision which precludes any oral change, discharge or termination. Yet, without the conversations referred to to assist in interpreting the acts of the parties and the writings of defendant, there is no basis for ascertaining whether plaintiff was correct in treating the letter of January 23 as a breach of the agreement and, therefore, justified in failing to attend at the time and place fixed for closing, or whether defendant properly concluded that plaintiff had canceled the agreement. While these conversations are not admissible to change, discharge or terminate the agreement, they are admissible to explain the circumstances under which the writings took place *(United States Print. & Lithograph Co. v Powers,* 233 NY 143, 151; Richardson, Evidence [9th ed], § 601). Without this information, final disposition of this matter was unwarranted. Concur — Birns, J. P., Fein, Lupiano and Bloom, J.J.

Sullivan, J., concurs in a memorandum as follows: I concur in the result but disavow any suggestion that the buyer had an obligation to tender performance on January 25, 1980, the date set for closing in the contract. Time was not of the essence, so that the buyer would have been entitled to a reasonable adjournment on January 25. Moreover, inasmuch as the buyer's obligations under the contract were subject to the issuance of a mortgage commitment on or before January 20, 1980, a January 24 mailing of a notice of election to terminate for failure to obtain a mortgage commitment would have been timely. (Although the seller had five days from January 20 to give notice, notice had to be by certified mail and was deemed given the "next business day following the day of mailing".) The buyer could therefore sit on his right to terminate until January 24. In the event he had not obtained the commitment sought by that date, he could then decide whether to cancel or to close by tendering all cash or making up in cash the difference between the commitment sought and any commitment previously obtained for a lesser amount. Thus, it is fairly obvious that none of the parties could realistically have contemplated a closing on January 25. Indeed, it is highly unlikely that even if a commitment were obtained by January 20 the bank would have been able to close five days later, given the practicalities involved in scheduling a closing, including ordering and reviewing a title report. Consequently, the buyer's failure to tender performance on the 25th would appear to be of no significance. While I agree with the majority that

it is not at all certain that the seller's letter of January 23 on its face can be construed as a clear and unequivocal cancellation of the contract sufficient to constitute an anticipatory breach, the letter of January 26 does not suffer from such ambiguity. It was a clear and unequivocal renunciation of the contract, assuming, of course, that the buyer's attorney had not, as the seller contends, agreed orally to a termination of the contract on January 23. It is equally clear that the buyer considered the contract breached on the 26th, since he proceeded to prepare the summons and complaint upon which this action is based. He did not, as he had done after receiving the letter of the 23rd, contact the seller or otherwise take action communicating to the seller that he would insist on holding the seller to the contract. (See *Becker v Seggie,* 139 App Div 463; see, generally, 10 NY Jur, Contracts, § 369.) I believe a question is raised as to the content ,and effect of the conversation between the attorneys on the 23rd, although it is noteworthy that the contract forbids oral modifications of its terms. A resolution of these issues will determine the legal effort of the seller's letters of January 23 and 26.