10-4905-cv(L)
Briarwood Farms, Inc. v. Toll Bros., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 22nd day of December, two thousand eleven.

PRESENT:  GUIDO CALABRESI,
          REENA RAGGI,
          SUSAN L. CARNEY,
                *Circuit Judges.*

-----------------------------------------------------------------------

BRIARWOOD FARMS, INC.,
                *Plaintiff-Counter-Defendant-*
                *Appellee,*

                v.                                    No. 10-4905-cv(L);
                                                         11-0752-cv(CON)

TOLL BROS., INC.,
                *Defendant-Counter-Claimant-*
                *Appellant.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:     WILLIAM P. HARRINGTON (Robert D. Meade, Susan E. Galvão, *on the brief*), Bleakley Platt & Schmidt, LLP, White Plains, New York.

APPEARING FOR APPELLEE:      JOSEPH J. HASPEL, Esq., Goshen, New York.

Appeal from the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the amended judgment entered on February 22, 2011, is AFFIRMED.

Defendant Toll Bros., Inc. ("Toll") appeals from an award of summary judgment in favor of plaintiff Briarwood Farms, Inc. ("Briarwood") on its claim for breach of contract. Toll's only argument on appeal is that the district court erred in concluding, as a matter of law, that Briarwood did not repudiate the November 7, 2005 Agreement to sell Toll a planned 66-acre, 41-lot subdivision property (the "Property") in the Village of Pomona, New York for $13,325,000. Because the district court resolved the question on what it construed as cross-motions for summary judgment, our standard of review is de novo. See NML Capital v. Republic of Argentina, 621 F.3d 230, 236 (2d Cir. 2010) (reviewing motion for summary judgment). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm, which rests on the district court's thoughtful and well-reasoned application of the New York law of anticipatory repudiation.

The Agreement expressly conditioned Toll's payment obligations on Briarwood's delivery, "at [its] sole cost and expense, of final, unappealable subdivision approval of the Property in accordance with the Subdivision Plan ['Plan'] . . . , and the satisfaction by [Briarwood] of any conditions of the Final Approval, such that upon posting of customary security and payment of application and inspection fees by [Toll], [Toll] may file the plat and

2

commence infrastructure improvements and apply for and obtain building permits." Agreement ¶ 16(a)(iii). The Agreement stated that "[t]he conditions set forth in [¶] 16(a)(iii) . . . shall be subject only to such conditions as [Toll] may approve at [its] sole discretion, which approval shall not be unreasonably withheld with respect to those modifications which do not have a material adverse effect on the proposed development." Id. ¶ 16(b). Closing was to take place "thirty (30) days following the date upon which all conditions to Closing set forth in [¶] 16 hereunder have been satisfied," id. ¶ 4, and "[i]f on or before the date of Closing all contingencies and conditions specified herein are not or cannot be satisfied, then Buyer [i.e., Toll] shall have the option of . . . cancelling this Agreement." Id. ¶ 16(c).

On January 12, 2006, Briarwood obtained preliminary subdivision approval of the Property from the Pomona Planning Board ("Board"). See N.Y. Village Law § 7-728(5); Village of Pomona, N.Y. Code § 118-11. Final subdivision approval of the Property, see N.Y. Village Law § 7-728(6); Village of Pomona, N.Y. Code § 118-12, however, was subject to a number of conditions, of which five are at issue here: (1) that a road, Klinger Court, be repaved at Toll's expense if damaged during construction; (2) that any individual lots within the subdivided Property "subject to Steep Slope requirements . . . be subject to Planning Board site plan review," see Village of Pomona, N.Y. Code §§ 119-4(B), 119-7(A); (3) that a particular cul-de-sac's grade be reduced from 10% to 4%; (4) that a new drainage system be installed along the rear property line of two lots in the subdivision; and (5) that a landscaping plan be determined at the hearing regarding final subdivision approval. By letter dated December 22, 2006, Toll notified Briarwood that these five conditions would have a

3

material adverse effect on the proposed development, <u>see</u> Agreement ¶ 16(b), and that it would not accept them. The only disputed issue here is whether Briarwood's December 28, 2006 response to Toll's December 22, 2006 letter was an anticipatory repudiation of the Agreement.

Under well-settled principles of New York contract law, an anticipatory "repudiation can be either a statement by the obligor to the obligee indicating that the obligor will commit a breach" of an agreement "or a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." <u>Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.</u>, 92 N.Y.2d 458, 463, 682 N.Y.S.2d 664, 667 (1998) (internal quotation marks omitted); <u>accord</u> <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111–12 (2d Cir. 2010). Such a "repudiation can be determined to have occurred only when it is shown that 'the announcement of an intention not to perform was positive and unequivocal.'" <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d at 112 (quoting <u>Tenavision, Inc. v. Neuman</u>, 45 N.Y.2d 145, 150, 408 N.Y.S.2d 36, 38 (1978)). If the December 28, 2006 letter constituted a positive and unequivocal repudiation by Briarwood, then Toll had a right immediately to terminate the Agreement. <u>See</u> <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002); <u>Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.</u>, 92 N.Y.2d at 463, 682 N.Y.S.2d at 667. If it did not, then Toll's purported cancellation of the Agreement by letter dated January 22, 2007, was in fact a breach of the Agreement. <u>See</u> <u>Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.</u>, 92 N.Y.2d at 463, 682 N.Y.S.2d at 667 (noting "serious consequences" to party that elects to treat less than certain or equivocal communications as anticipatory repudiation).

4

Whether anticipatory repudiation has occurred is generally an issue of fact for the jury. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 112 (citing Bercow v. Damus, 5 A.D.3d 711, 712, 776 N.Y.S.2d 289, 291 (2d Dep't 2004)). An exception to that general rule applies, however, where, as here, the purported repudiation is in writing. See id. (citing York Agents, Inc. v. Bethlehem Steel Corp., 36 A.D.2d 62, 63–64, 318 N.Y.S.2d 157, 158–59 (1st Dep't 1971)). In such circumstances, the issue may be decided as a matter of law so long as there is no ambiguity as to the writing's meaning. See id. (citing Hartford Accident & Indem. Co. v. Wesolowski, 33 N.Y.2d 169, 172, 350 N.Y.S.2d 895, 898 (1973)).

Like the district court, we identify no ambiguity in Briarwood's December 28, 2006 letter. No reasonable reader could construe it as a positive and unequivocal repudiation of the Agreement. It does not signal that Briarwood is unwilling to comply with ¶ 16(a)(iii) or any other provision of the Agreement. Nor does it advance an untenable interpretation of any provision of the Agreement. See SPI Commc'ns, Inc. v. WTZA-TV Assocs. Ltd. P'ship, 229 A.D.2d 644, 645, 644 N.Y.S.2d 788, 790 (3d Dep't 1996). Rather, the letter invites discussion and negotiation regarding how best to secure final subdivision approval from the Board. See Agreement ¶ 16(a)(iii). In response to Toll's five objections, Briarwood (1) offered to post a bond to cover the potential cost of repaving Klinger Court; (2) pointed out that the steep slope condition restated the Village Code requirement to secure a site development plan permit for each lot within a subdivision; (3) agreed to pay any cost differential resulting from use of a 4% rather than a 10% grade for the cul-de-sac; (4) proposed two alternative solutions to the drainage system problem; and (5) pointed out that

the landscaping plan condition, like the steep slope condition, restated a Village Code requirement.

There is no merit in Toll's suggestion that Briarwood has taken contradictory positions during this litigation regarding the Village's steep slope requirements and the process for obtaining site development plan permits. See Village of Pomona, N.Y. Code §§ 119-4(B), 119-7(A).[1] The Village Code states that "[t]o the maximum extent possible," the Board's consideration of steep slope protection in reviewing applications for site development plan permits should take place concurrently with review of "other applications that are directly related." Id. § 119-7(A). As Briarwood concedes, an applicant seeking the Board's final approval of a subdivision plan may at the same time seek to obtain hypothetical site development plan permits for the individual lots in the subdivision. The Board's approval of hypothetical site development plans during this regulatory phase, however, does not end the approval process for individual lots within a subdivision. As the Village's engineer, P.J. Corless, testified, more than 90% of the time, a developer must return to the Board to assure it that the actual site development plan for each individual lot complies with the steep slope requirements. Briarwood's past representations regarding this rather convoluted approval process were consistent with the parties' current, shared understanding of the process.

---

[1] We note that while the Agreement expressly required Briarwood to obtain final approval of the subdivision plan from the Board, see Agreement ¶ 16(a)(iii), it did not, on its face, require Briarwood to obtain individual site development plan permits. This omission strikes us as curious and potentially significant. We need not consider the potential complications because Briarwood concedes that it was required to secure hypothetical site development plan permits as part of the final subdivision approval process.

Nor are we persuaded by Toll's argument that an affidavit and deposition testimony from Briarwood's land use expert, David Zigler, create ambiguity regarding the meaning of the December 28, 2006 letter.  As the district court correctly recognized—and as Toll does not dispute—whether repudiation occurred must be judged on the basis of Briarwood's words and acts as communicated to Toll at the time.  See Forward Publ'n, Inc. v. Int'l Pictures, Inc., 277 A.D. 846, 846, 98 N.Y.S.2d 139, 140 (1st Dep't 1950).  It may well be that prior communications and acts of Briarwood known to Toll at the time of the December 28, 2006 letter could also reasonably have influenced Toll's interpretation of the December 28, 2006 letter.  See Mardon v. Simon, 78 A.D.2d 805, 806, 433 N.Y.S.2d 431, 433 (1st Dep't 1980).  But even if Zigler was not aware that approval for hypothetical site development plans could be obtained during the subdivision approval process, Toll points to no evidence that Zigler or any other Briarwood representative told Toll either (1) that hypothetical site development approval could not be obtained during final subdivision approval or (2) that Briarwood was unwilling to seek hypothetical site development approval during the yet-to-be-completed final subdivision approval process.[2]  Thus, any misunderstanding by Zigler as to the approval process cannot have influenced Toll's contemporaneous reading of the December 28, 2006 letter.

_____

[2] Our own review of the record indicates that Zigler was not present at the December 12, 2006 meeting referenced in Toll's December 22, 2006 letter.  Moreover, Briarwood's attorney did not consult Zigler in drafting the portion of the December 28, 2006 letter discussing the steep slope condition.

In sum, because there is no factual basis for finding repudiation by Briarwood in the December 28, 2006 letter, Toll's January 22, 2007 cancellation of the Agreement was a breach warranting a judgment in favor of Briarwood. For the foregoing reasons, the amended judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court