**Wayne B. WHATLEY, Plaintiff,**

v.

**Virgil Nolan PRICE, Individually and as Superintendent of Education of Tallapoosa County Schools et al., Defendants.**

**Civ. A. No. 1019–E.**

United States District Court.
M. D. Alabama, E. D.
Dec. 28, 1973.

J. Victor Price, Jr., Montgomery, Ala., for plaintiff.

John F. Dillon, IV, Dillon, Kelley & Barnes, Alexander City, Ala., for defendants.

ORDER

VARNER, District Judge.

This is an action brought by a former employee of the Tallapoosa County Board of Education alleging that he was wrongfully discharged by the Board in contravention of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States of America. Jurisdiction is based upon Title 42, § 1983, and Title 28, § 1343, of the United States Code.

I. STATEMENT OF FACTS

The Plaintiff in this cause was employed as a non-tenured employee by the Tallapoosa County Board of Education in May, 1970, to serve as principal of New Site High School in New Site, Alabama. The defense was, and this Court finds, that, during the 1972–1973 school year, dissension and discontent developed in the school primarily as a result of differences between the Plaintiff and various faculty members. This dissension and discontent was not limited to the school but had spread to the entire community of New Site. In an effort to reconcile differences and discuss other problems which might exist, the trustees of the New Site School offered to meet with the Plaintiff in March, 1973. On Saturday, March 24, 1973, the Chairman of the Board of Trustees visited the Plaintiff at his home and asked him if he wished to meet with the trustees and discuss any misunderstanding or problems which might exist. Plaintiff replied that he did not, that he did not

need a "peacemaker", and that he was prepared to rest his case before Mr. Price (the County Superintendent of Education) and the County Board with no further meetings with the trustees. Subsequently, the trustees recommended in writing to the Board of Education that the Plaintiff not be rehired as principal of the New Site School for the next school year.

The recommendation of the trustees was based in part upon 12 reasons which were signed and presented to the Tallapoosa County Board of Education by the trustees (see Appendix A). This recommendation was not made public by either the members of the Board of Trustees or the members of the School Board but was made public by the Plaintiff.

Acting upon the individual knowledge of each of the Board members of the aura of dissension and discontent at the New Site School and the spread thereof into the community, and in accordance with the recommendation of the trustees, the Board of Education voted on April 27, 1973, not to rehire Plaintiff for the 1973–1974 school year. Plaintiff was informed of the Board's decision by letter from the Superintendent of Education dated April 30, 1973. Plaintiff thereupon requested a hearing before the Board and was immediately informed that he would be granted a hearing on May 8, 1973. On May 8, 1973, the Board met, at which time Plaintiff discussed at length the reasons given by the trustees for their recommendation that Plaintiff not be rehired as principal of the New Site School. Plaintiff did not request the Board to have any witnesses present at the hearing. Present, however, were the three present trustees of the New Site School and two former trustees, the latter being there at the request of the Plaintiff. During the hearing, which lasted approximately five hours, the present trustees answered questions propounded by Plaintiff and the Board. The former trustees also answered questions which were propounded by Plaintiff. With regard to the reasons or complaints given by the trustees

for their recommendation, Plaintiff stated to the Board at the hearing that some of them were true, some partially true, and some untrue.

At the end of this five-hour hearing, the Board of Education, motivated solely by a desire to provide the best educational atmosphere possible at the school, allowed their previous decision not to renew Plaintiff's contract to stand.

The Board of Education completely honored all of its contracts with Plaintiff, particularly the one for the 1972–1973 school year. No one connected with the Board ever gave to the Plaintiff any expectation of continued employment, and at no time did the trustees or the Board of Education make public the reasons for the trustees' recommendation that Plaintiff not be hired for the ensuing school year.

## II. PROPOSITIONS OF LAW

This Court may summarily discard any possible deprivation of property rights the Plaintiff may have lost by not being retained for further employment since Plaintiff himself makes no such contention. Rather, the Plaintiff in this cause is contending that the nonrenewal of his contract deprived him of an interest in "liberty" in that his reputation was so severely damaged that any possibilities of future employment would be limited. Plaintiff further contends that he was not given a due process hearing before his dismissal.

■ The Fourteenth Amendment does not require an opportunity for a hearing prior to the nonrenewal of a non-tenured state teacher's contract unless he can show that the nonrenewal deprived him of an interest in "liberty" or that he had a "property" interest in continued employment, despite the lack of tenure or a formal contract. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548.

We turn then to the meaning of "liberty" and whether or not this Plaintiff suffered any deprivation of it.

While the Supreme Court of the United States has not attempted to define with exactness the liberty guaranteed by the Fourteenth Amendment, the term has received much consideration. In a Constitution for a free people, there can be no doubt that the meaning of "liberty" must be broad indeed. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; Stanley v. Illinois, 405 U. S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. There might be cases in which a Board of Education refused to re-employ a person under such circumstances that interest in liberty would be implicated. We hold that the case at bar does not fall within this category.

■ In refusing to rehire the Plaintiff, the Board of Education did not make any charge against him that might seriously damage Plaintiff's standing and association in his community. The nonrenewal of his contract was not based on a charge that he had been guilty of immorality or dishonesty. If such a charge had been made, we would have a different case, for,

"[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Roth, supra.

Similarly, there was no suggestion that the Board of Education, in declining to re-employ the Plaintiff, imposed on him a stigma or other disability that forclosed his freedom to take advantage of other employment opportunities. Thus, this Plaintiff is still free to seek employment wherever he wishes.

"It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Roth, supra.

■ Plaintiff contends that his reputation was severely damaged in that the 12 written charges against him infer that he was incompetent. This Court is of the opinion that the real reason for

Plaintiff's discharge was not because of incompetency but, rather, his total failure to get along with his fellow employees, students and other citizens in the local community. His apparent lack of interest in extracurricular school events greatly contributed to the action taken by the Board.

Any damage that may have been done to the Plaintiff's reputation was committed by his own person. Both the trustees of the New Site School and the members of the Board of Education maintained a strict policy of secrecy regarding any action done to this Plaintiff. The recommendation by the trustees in writing to the Board of Education that Plaintiff not be rehired as principal was never made public by either the trustees or the members of the Board. The Plaintiff himself made it known in the local community that he would not be rehired and the reasons therefor.

Plaintiff argues strenuously that, even though he may not have been entitled to a hearing, he was afforded one, and, thus, it had to be a due process hearing as prescribed by law and that, where reasons are given for the termination which impair Plaintiff's liberty to seek further similar employment, notice and opportunity to be heard are constitutionally necessary. Ortwein v. Mackey, D. C., 358 F.Supp. 705.[1]

Plaintiff in the *Ortwein* case did, in fact, receive a hearing concerning his termination. The reason the District Court held that plaintiff was not afforded a due process hearing was because he was not allowed to have his counsel participate in the proceeding. Plaintiff claimed, and the District Court held, that this action was a violation of his due process rights. However, the Court went on to say that,

"We do not say that counsel must be provided at the pre-termination hearing, but only that the recipient must be allowed to retain an attorney if he so desires." *Ortwein*, supra.

In the case at bar, the Board of education, while under no rule, statute or constitutional mandate to do so, granted the Plaintiff an opportunity to appear before it in connection with their decision not to rehire him. He was given notice of the hearing and an opportunity to be present and be heard. Witnesses appeared on his behalf. He was not denied the right to have counsel present. The trustees who had made the recommendation to the School Board were present, and Plaintiff was given the opportunity to examine them and did so. At Plaintiff's request, two former trustees were present and made statements on Plaintiff's behalf. Plaintiff was heard by the School Board for ap-

---

1. This case varies substantially from Birnbaum v. Trussell, 2 Cir., 371 F.2d 672, in which the rights to a hearing of a non-tenured public employee are discussed at length. In that case the Court held that Dr. Birnbaum, being a public employee, had no

"* * * absolute right to a hearing on discharge from public employment because government employment is a privilege and not a property right," at page 677,

but that

"even if working for the Government is regarded as no more than a privilege, a discharge for disloyalty or for doubt about loyalty may involve such legal rights as those in reputation and ineligibility for other employment;" at page 677,

and that

"* * * whenever there is a substantial interest, other than employment by the state, involved in the discharge of a public employee, he can be removed neither on arbitrary grounds nor without a procedure calculated to determine whether legitimate grounds do exist." At pages 678, 679.

Unlike Dr. Birnbaum, Mr. Whatley was not accused of incompetence, disloyalty or other characteristics interfering with his reputation. While Mr. Whatley may have been right about, or may have had the prerogative as principal to insist on, most of the things which caused the dissension, he was not rehired because of his disagreement and dissension with members of the Board of Trustees and with tenured teachers. He was not rehired, not because he was wrong, but simply because he did not agree with current educational procedures at New Site.

proximately five hours at the conclusion of which it declined to reconsider its former decision.

It thus appears to this Court that the Plaintiff was given even more than that to which he was entitled. Every effort was made to insure that Plaintiff be granted a due process hearing in order that he would know why he was not being rehired. This hearing was afforded in spite of the fact that Plaintiff was a non-tenured employee and, under the *Roth* decision, was not entitled to a hearing.

The Board of Education, upon the recommendation of the trustees, did not renew the Plaintiff's contract solely because they wanted to provide the best educational atmosphere possible for the students at the school. Accordingly, it is the

*Order, judgment and decree of this Court that judgment be, and the same is hereby, entered in favor of the Defendants, and costs are hereby taxed against the Plaintiff, for which execution may issue.*

## APPENDIX A

WE THE TRUSTEES of New Site High School recommend to Supt. Virgil Nolan Price and the Tallapoosa County Board of Education that Mr. Wayne B. Whatley not be retained as Principal of New Site High School.

This recommendation is based on the following reasons (not listed in order of importance).

1. In the three years Mr. Whatley has been principal, there have been many instances of disagreements between he and members of the faculty. These disagreements involve such things as:

    a. Driving busses for the "Pep Club" to football and basketball games.

    b. Use of the pickup truck purchased primarily by funds donated by the New Site Community Club and assigned to Mr. Key for him to use, look

after, and be responsible for its care and maintenance.

    c. Number of and ways of selecting cheerleaders.

    d. Sponsoring all extracurricular activities such as Beta Club, Senior class, junior class, etc.

    e. Handling of discipline problems with almost all the complaints from teachers being that little or no disciplinary action was taken.

In a small community such as New Site, it is almost impossible for parents and members of the community not to become involved in school matters. This involvement in the community, whether pro or con, in return has a definite influence on the educational atmosphere of the school, and either adds or detracts from the educational process of that school.

As representatives of the people of New Site Community, the trustees of New Site School wish to create an atmosphere in which the learning and teaching process can best operate. In order to do this and in fairness to all concerned, the trustees felt that the duties of teachers in these areas should be settled defore the end of this school year, and if the teachers did not agree on what was asked for next year, they would have all summer to seek other positions. It was also the understanding that the trustees would back Mr. Whatley fully on those items agreed upon by he and the trustees.

At a trustee meeting on _____, trustees asked him to inform them of all changes he intended to make for the school year 1973–1974, and to inform teachers of how the implementation of these policies would affect them in regard to teaching duties as well as sponsoring extracurricular activities. Mr. Whatley declined to do so.

2. Patrons of school complain that during their conversations with Mr. Whatley that they are unable to get answers which they understand due to his use of so-called "big words", and not

sticking to the subject which they came to see him about.

3. Patrons of school question his dedication to the total school program. There are several reasons why people have indicated they feel this way. Among them are:

a. The fact that he attends very few fund-raising or extracurricular activities other than athletic events and P.T.A. meetings.

b. Has often made the statement that when he leaves the building each day that school problems and matters pertaining to the school *never enter* his mind until he enters the building the next day.

c. During the past two years the people of New Site community were assisting in the building and lighting of an athletic field. This endeavor required more volunteer labor than any project ever attempted at New Site School, and almost every citizen of New Site contributed labor and services of some sort. Mr. Whatley did absolutely no physical work on this project and his contribution was limited primarily to supervising the writing of some letters.

4. Athletic events are an important part of the school functions at a school such as New Site. In connection with this, some of the complaints against Mr. Whatley are:

a. At one junior football game he did not arrive at the game with money box and change until almost half-time.

b. On at least two occasions he was late arriving for varsity football games with money and tickets.

c. At football and basketball games he refused to sell or collect tickets, saying that he needs to be available if needed, yet he takes a seat and watches the game as if he were a paying spectator.

d. On one occasion he left a varsity football game without paying the officials.

e. Fails to move around and be in a position to handle discipline problems around restrooms and concession stands at ballgames, and has seemed to resent some problems in these areas being called to his attention.

f. The majority of the work to improve the athletic facilities of New Site School has been done through efforts of the New Site Recreation Club. Mr. Whatley has not attended a meeting of this club since Oct., 1971, despite repeated invitations by many people to do so.

5. Complaints have been received about Mr. Wahtley's lack of involvement in discipline problems, especially in the halls, lunchrooms, and smoking station. In short, the complaint is that Mr. Whatley will involve himself in only those discipline problems brought to him by a teacher and even then his actions are not strong enough.

6. Parents have complained that children have not been permitted to enter the building during inclement weather, despite the fact that Mr. Whatley and other teachers were permitted in the building.

7. On the day of the recent bomb threat, parents have complained that as they brought their children to school that day, they spoke to Mr. Whatley and that he did not inform them of the bomb threat. The parents felt they should have been told, and that the decision as to whether their children should remain in school should be theirs. Some parents talked to Mr. Whatley on this occasion and also later about this, and his only comment was, "They were in good hands."

8. The care and supervision of the buildings and grounds leave something to be desired. The windows are often left open in the main building, often on cold rainy weekends. This not only causes damage to the building and contents, but wastes much heat in the process.

Lights are often left on, both overnight and on weekends.

Grass around buildings is not cut during the summer, except by Mr. Key and volunteers.

9. With at least one faculty member it appears that problems related to the church which they both attend have been brought into school activities.

10. Has caused a morale problem among some of the more experienced teachers by evaluating and judging their teaching abilities and procedures. It would seem questionable as to whether his experiences in the classroom (or lack of it) would qualify him to judge teachers with many years experience.

11. In relation to Item 10 and in view of other problems which have arisen in connection with strictly classroom activities such as discipline, teaching methods, assigning grades, motivation, homework and others, it seems apparent that Mr. Whatley's lack of classroom experience limits his understanding of a problem from the teachers' point of view.

There has been discussion of this problem over the last three years and in the past Mr. Whatley has not taught any academic classes, despite an understanding between the Superintendent of Education and chairman of the trustees that he would do so. Also, the fact that he has an elementary principal and full-time secretary would have permitted him to teach a class in a small school such as New Site without seriously interfering with his administrative duties. In addition, teaching a class would help the academic program by reducing class size and number of courses offered.

12. On Saturday, March 24, the chairman of the board of trustees visited Mr. Whatley at his home and asked him if he wished to meet with the trustees and discuss any misunderstanding or problems which might exist. He replied that he did not, that he did not need a "peacemaker", and that he was prepared to rest his case before Mr. Price and the County Board with no further meetings with the trustees.

/s/ Lynn Blythe   /s/ Joe Hand   /s/ Wilton Peters
Lynn Blythe     Joe Hand     Wilton Peters